Joseph E. EDGE, Sr., Appellant,

v.

Louis L. WAINWRIGHT, Director, Division of Corrections, State of Florida, Appellee.

No. 22202.

United States Court of Appeals
Fifth Circuit.

June 8, 1965.

Rehearing Denied July 8, 1965.

Joseph E. Edge, Sr., pro se.

Earl Faircloth, Atty. Gen., James G. Mahorner, Asst. Atty. Gen., Tallahassee, Fla., for appellee.

Before TUTTLE, Chief Judge, BELL, Circuit Judge, and DYER, District Judge.

TUTTLE, Chief Judge:

This appeal is taken by Joseph E. Edge, Sr., *pro se*, from the district court's denial, without a hearing, of his petition for habeas corpus. Indicted on a charge of first degree murder, Edge was found guilty of manslaughter and sentenced, on February 26, 1953, to fifteen years[1] in the Florida State Prison, where he is presently incarcerated. No notice of appeal from his conviction was filed until March 1956, and that appeal, being untimely, was dismissed. Edge v. State, Fla.1956, 88 So. 2d 628. On December 12, 1963, he filed a motion under Florida Criminal Procedure Rule 1, F.S.A. ch. 924 Appendix, with the sentencing court. This motion was denied by that court on December 18, 1963, and the denial was affirmed by the District Court of Appeal, per curiam, on May 28, 1964. After an unsuccessful[2] attempt to file a petition for certiorari in the Florida Supreme Court, he filed his petition for habeas corpus in the district court.

Among other allegations, Edge's petition avers:

"Petitioner asked his [appointed] attorney, Hon. Carlton L. Welch to take an appeal from the Judgement [sic] and sentence imposed upon him * * *, and was told by said attorney that 'My obligations to you terminated upon the ending of your trial, and that the court does not pay me to take an appeal in your behalf'.

"Petitioner wrote Honorable Charles A. Luckie, Judge of the Fourth Judicial Circuit Court, Duval County, Florida, asking to appoint an attorney to take an appeal from his conviction * * *. Petitioner never got a reply."

The district court issued a show cause order asking the State to respond to Edge's allegations that he was denied the right to testify before the jury and that his appointed counsel was incompetent. After the State responded on these two questions, the show cause order was dismissed and the writ denied. The show cause order disposed of Edge's contention that his right to appeal was thwarted with the observation that "the question of whether or not he was not permitted to file papers in court until 1956, it is clear, has no bearing upon the legality of his present detention."

The allegations in Edge's petition set forth above are substantially identical to those made by the appellant in Pate v. Holman, 5 Cir. 1965, 341 F.2d 764, modified on rehearing, 343 F.2d 546. Both petitioners claimed that they were unable to retain counsel to perfect an appeal from their convictions due to their indigency. Pate's retained trial counsel took no action to obtain post-conviction relief because he entered the armed services shortly after the trial. Edge's appointed trial counsel allegedly declined to seek post-conviction relief for his client because he saw no prospect of remuneration for his efforts. Compare Lyles v. United States, 5 Cir. 1965, 346 F.2d 789 (decided May 1965). In both cases, the petitioners alleged that they informed the trial court of their desire to appeal and their need for assistance; in both cases, their letters allegedly went unanswered. Also in both cases the trial transcripts are no longer in existence. Summarizing its holding in Pate, this court stated:

"For a petitioner to be entitled to post-conviction relief, it is not enough to show that indigency occasioned the petitioner's inability to

---

1. The maximum penalty for manslaughter in Florida is twenty years. Fla.Stat. § 782.07, F.S.A.

2. The petition was returned to him with notification that it could not be accepted unless he submitted a $25.00 fee or a fresh adjudication of his indigency by the trial court. (He had previously been adjudged an indigent at his arraignment in 1953.) Edge avers that he applied for a new adjudication of indigency but that no action was taken on his application. The time for filing for certiorari had elapsed prior to the filing of his habeas corpus petition.

employ counsel or to appeal; the petitioner must show that the *State* deprived him of his Fourteenth Amendment rights. State action is shown when a responsible official in the State's system of justice rejects a request for counsel or fails to take proper steps toward appointment of counsel for a convicted defendant when he has knowledge of the defendant's indigency and desire for appellate counsel." 341 F.2d at 775.

This holding is applicable here. Pate implicitly rejects the State's argument that before an indigent may obtain appellate counsel he is required to initiate an appeal. The pitfalls facing uncounseled defendants seeking to comply with Florida's notice of appeal requirements are clearly demonstrated in Knowles v. State, Fla.Dist.Ct.App.1964, 165 So.2d 201 (dismissing *pro se* appeal due to improper form of notice), cert. denied, 169 So.2d 389. If Edge can prove that he was deprived of his right to appeal and to have the assistance of counsel on appeal due to his indigency and that the trial judge, or some other responsible official, knew of his plight and failed to aid him, he will have shown enough to entitle him to a writ of habeas corpus.

It is, of course, true that the district court is not compelled blindly to accept all allegations in habeas corpus applications as presumptively valid. For example, there would be no need for a hearing on a petitioner's allegations of a failure to indict, set bail, and arraign where the record demonstrates that he was indicted, given bail and arraigned. Black v. United States, 9 Cir. 1959, 269 F.2d 38, cert. denied, 1960, 361 U.S. 938, 80 S.Ct. 379, 4 L.Ed.2d 357. Nor is the court required to accept allegations which are "patently unbelievable." United States v. Newman, D.D.C.1954, 126 F.Supp. 94, 97. But Edge's allegations are not patently unbelievable, nor is there any matter of which the district court could have taken notice which would have permitted it to

dispense with a hearing on those allegations.

The State contends that two documents previously filed by Edge in the Florida courts demonstrate that he "decided after the trial not to take an appeal." In his notice of appeal to the state Supreme Court in March 1956, Edge explained his tardiness in appealing by stating:

"1.—That due to his ignorance of the law he was afraid to appeal his case within the time as prescribed by law. This ignorance was fostered by the State's Attorney and the Court appointed Attorney for the Appellant."

In a petition for habeas corpus filed in the Florida Supreme Court in August 1956, Edge elaborated on this point as follows:

"The Appellant was reluctant to issue [sic] a Writ of Habeas Corpus immediately subsequent to his conviction due to the advice of his incapable court appointed lawyer. The lawyer, Carlton L. Welch, neglected to advise the Appellent [sic] of the statue [sic] which provides a defendent [sic] indicted for first degree murder and found guilty of manslaughter can not be tried for first or second degree murder of the same victim again. [A letter referred to at this point in the petition is not presented to us by the State; possibly it was a letter from Edge's appointed counsel bearing on this allegation.]

\* \* \* \* \* \*

The appellant had no hopes for an appeal because a fear was fostered by the Appellants [sic] court appointed attorney, the trial judge, and other court officials."

The State argues that these previous allegations so contradict Edge's present allegations that he asked his trial counsel to appeal and that he requested the trial court to appoint appellate counsel, that the present allegations could properly have been wholly ignored by the

district court. We find no merit in this contention. In the first place, the district court took no opportunity to consider the allegedly contradictory averments, since it completely ignored the present allegations concerning the right to appeal. Moreover, the present allegations are not necessarily in conflict with the earlier statements; it is quite possible that Edge requested his attorney and the trial judge to help him perfect an appeal and *subsequently* was led to believe that a successful appeal might open the way for conviction of a greater offense. Be this as it may, if Edge's previous contentions are to be considered in this case, they should be considered on their face. These previous allegations charge serious misconduct to State officials and to Edge's appointed trial counsel in misleading and frightening him from taking his appeal as of right. It would be strange indeed if the reason for not applying the Pate rule in this case was the fact that the petitioner, in some previous case, had alleged defalcations even more serious than those set forth in his present petition.

One significant distinction between the situations in Pate and the present case requires a slightly different form of relief. On rehearing, the court in Pate adopted the view of the Ninth Circuit in Blair v. People of State of California, 1965, 340 F.2d 741, 745:

> "that a state prisoner who believes that some decision of the United States Supreme Court subsequent to the state court decision in his case requires that his conviction or sentence be set aside should first pursue any state remedy which may be available to present that contention

before applying for a federal writ of habeas corpus."

Since Pate had not yet litigated the effect of Douglas v. People of State of California, 1963, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, (indigent's right to counsel on appeal), in a State coram nobis proceeding, this court remanded the case in order to give him the opportunity to do so.

Edge's case is different. Not only did he bring his application for collateral relief under Florida Criminal Procedure Rule 1 several months after Douglas had been decided, it appears that he expressly attacked his denial of the right to counsel on appeal in his Rule 1 petition.[3] Consequently, the proper course is to remand the case to the district court to hold a hearing on Edge's allegations of the denial by the state of his right to appeal with the assistance of counsel. In the unusual circumstances of this case, we think Edge is entitled to the assistance of counsel in the conduct of this hearing. If it is found that Edge's indigency was the cause of his not obtaining appellate counsel and that he informed a responsible State officer of his inability to obtain appellate counsel, he is entitled to be released from State custody based on his 1953 conviction.[4]

One more observation is in order. Edge has already served over twelve years of a fifteen year sentence. It has not yet been held, to our knowledge, that the State could be precluded from retrying him on the manslaughter charge or from refusing to credit his twelve-year's service against any subsequent sentence which might be imposed upon him. But cf. United States v. Ewell, S.D.Ind., 242 F.Supp. 451, July 13, 1964

---

3. The papers in the Rule 1 proceeding are not before us, but the statement in text appears in Edge's brief and is not contradicted by the State.

4. In his briefs on this appeal, Edge contends that, although he did take the stand in his trial, it was out of the presence of the jury, apparently during an investigation into whether an inculpatory state-

ment allegedly made by the defendant was admissible. In light of this contention, it appears that the State's presentation of the Clerk's memorandum of witnesses at Edge's trial was not adequate rebuttal to the allegation that he was not permitted to appear in his own behalf *before the jury*. Therefore, inquiry into this allegation should also be open upon remand to the district court.

(dismissing new indictment of defendant who previously served part of a sentence on the same offense vacated upon motion under 28 U.S.C. § 2255), prob. juris. noted, 85 S.Ct. 1530 (No. 750, May 17, 1965). Compare Bayless v. United States, 8 Cir. 1945, 147 F.2d 169, rev'd on reh. on other grounds, 150 F.2d 256; Bayless v. United States, 8 Cir. 1945, 147 F.2d 171; Van Alstyne, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L.J. 606 (1965). The question is a knotty one which should be considered by the appellant and the counsel who will represent him upon remand. We express no opinion on whether it would be a denial of due process for the State to reincarcerate Edge for the same offense, if he is successful in obtaining habeas corpus relief, without any credit for the twelve years he has already served. The spectre of Edge's being subjected to as much as twenty more years of prison is such, however, that we feel constrained expressly to allude to the problem.

For the reasons previously set forth, the order of the district court is reversed and the cause remanded for proceedings not inconsistent with this opinion.

Rives, Circuit Judge, dissented.