**UNITED STATES of America ex rel. Edward MITCHELL, Relator-Appellee,**

v.

**Hon. Harold FOLLETTE, Warden, Green Haven Prison, Stormville, New York, Respondent-Appellant.**

**No. 165, Docket 29841.**

United States Court of Appeals Second Circuit.

Argued Nov. 16, 1965.

Decided Feb. 25, 1966.

Michael H. Rauch, New York City (Louis J. Lefkowitz, Atty. Gen. of New York) (Samuel A. Hirshowitz, First Asst. Atty. Gen., Brenda Soloff, Deputy Asst. Atty. Gen., of counsel), for appellant.

Phylis Skloot, New York City (Leon B. Polsky, Anthony F. Marra, New York City), for appellee.

Before MEDINA, WATERMAN and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge:

Edward Mitchell, represented by assigned counsel, was convicted in 1952 after a jury trial in a New York court of assault in the first and second degrees, New York Penal Law, McKinney's Consol.Laws, c. 40, §§ 240, 242. The conviction rested on proof that he had struck a woman about the head and the body with an ice pick, inflicting a head wound which extended from the posterior portion of the skull through the mouth, and body wounds which punctured the chest and pierced a kidney. Since he had previously been convicted of assaulting another woman with an axe, he was sentenced as a second felony offender to a term of ten to twenty years. New York Penal Law, § 1941.

On the day sentence was imposed, when asked if he had anything to say before final disposition, Mitchell told the judge in the presence of assigned counsel, "I would love to have an appeal, but I have no means." According to the transcript of the state proceeding, nothing further was then said by court or counsel on the subject. No notice of appeal was filed within, or after, the thirty days allotted by N.Y. Code of Criminal Procedure, § 521, although, if his claims

were not frivolous, Mitchell could have appealed as a poor person without payment of any fees or expenses, N.Y.Code of Criminal Procedure, §§ 456, 458, 485; Civil Practice Act, §§ 558, 1493, and would have received the assistance of counsel, assigned by the Appellate Division, who would have had access to the trial transcript. See People v. Kalan, 2 N.Y.2d 278, 159 N.Y.S.2d 480, 140 N.E. 2d 357 (1957); People v. Pitts, 6 N.Y. 2d 288, 189 N.Y.S.2d 650, 160 N.E.2d 523 (1959).

On October 29, 1964, Mitchell filed a petition for habeas corpus, 28 U.S.C. § 2241, in the District Court for the Southern District of New York, claiming that the state had unconstitutionally deprived him of a right to appeal his 1952 conviction. He set forth the facts above recited, charged that "neither the Court assigned counsel nor the Court Clerk protected his right to appeal" by having a notice filed on his behalf, and properly alleged exhaustion of state remedies by prior and unsuccessful applica· tion for a writ of error *coram nobis*.[1]

The Clerk of the district court notified Mitchell that the petition would be placed on the motion calendar for November 9; at that time a two week adjournment was granted, apparently at the State's request. On November 20 an Assistant Attorney General swore to an affidavit, which he caused to be served on Mitchell on that day and which we assume was submitted to the court on November 23. The affidavit claimed that the case involved nothing more than a failure by Mitchell to file a timely notice of appeal as New York had properly required, and that therefore the application should be dismissed. Some months later the district judge, "feeling the need of a presentation for petitioner by counsel," assigned a law professor, admitted *pro hac vice,* "to argue or try this cause" for

1. Mitchell's *coram nobis* application in Nassau County Court was denied without a hearing and without opinion. The Appellate Division affirmed, People v. Mitchell, 20 App.Div.2d 722, 247 N.Y.S.2d 499 (2d Dept. 1964), in a memorandum

opinion citing People v. Kling, 19 App. Div.2d 750, 242 N.Y.S.2d 977 (2d Dept. 1963), discussed below. No attempt was made to secure certiorari from the Supreme Court of the United States.

Mitchell. However, after a short interval and without any briefs or oral argument, the judge handed down an opinion which, on the basis of the uncontested fact that Mitchell was an indigent and the remark appearing unanswered in the minutes of the sentencing proceeding,[2] not merely denied the State's request for dismissal but in effect ordered that Mitchell be released unless New York now allowed him to take a belated appeal from his conviction or granted him a new trial. The district court having issued a certificate of probable cause, 28 U.S.C. § 2253, the State appealed, contending that its request for dismissal should have been granted or, if not, that the judge should have ordered a hearing at which the facts could have been developed.

## I.

■■ We do not understand Mitchell to assert that the New York procedure was unconstitutional simply because it required timely filing of a notice of appeal without providing judicial advice as to the requirement or the assistance of counsel to effectuate the filing. No constitutional infirmity has been found in the federal procedure conditioning the requirement of advice by the judge and filing of notice by the clerk on the absence of counsel at the time of sentence, F.R.Crim.P. 37(a) (2); nor, in cases where a defendant was represented by counsel at the time of sentence but possibly not thereafter, has the Supreme Court intimated any constitutional objection to the mere failure to appoint counsel to perform the simple task of filing a notice of appeal on his behalf.[3] See Coppedge v. United States, 369 U.S. 438, n. 5 at 442–443, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). We likewise do not understand Mitchell now to claim that failure of assigned counsel properly to advise him of his right to appeal would be attributable to the state. Occasional short-

2. The relevant portions are as follows:
The Clerk: You are Edward Mitchell?
The Defendant: Yes.
The Clerk: You appear here with your counsel, Mr. John T. Schettino?
The Defendant: Yes, sir.
The Clerk: Have you any legal cause to show why sentence should not be imposed?
The Defendant: I have.
The Clerk: Address your remarks to the Court, please.
The Defendant: Your Honor, I am innocent of this assault charge. I have three witnesses that will testify to that effect. As an innocent man I don't think I ought to be sentenced justifiably.
The Court: Is there anything further you wish to tell the Court?
The Defendant: No, Judge, your Honor.
The Court: If the defendant is ready to proceed with the sentence, I am ready to make a final disposition.
Mr. Schettino: If it please the Court, at this time I should like to move to set aside the verdict on the ground that it is contrary to the weight of evidence and upon all the grounds provided in the Code of Criminal Procedure.
The Court: The motions are denied and exceptions will be noted for your client upon the record.
Now, Edward Mitchell, is there anything further you care to say to the Court before the Court makes a final disposition?
The Defendant: I would love to have an appeal, but I have no means. I have no way of doing it, so I have to take it.

3. This is not to deny that a procedure lending itself to forfeiture of appeal from ignorance of filing requirements is most undesirable and constitutes a proper subject for rule-making or legislation. Indeed, since September 1, 1964, assigned counsel in the First Department of New York have been under a duty "to advise the defendant in writing of his right to appeal, the time limitations involved, and the manner of instituting an appeal and of obtaining a transcript of the testimony * * * to ascertain whether the defendant wishes to appeal and, if so, * * * [to] serve and file the necessary notice of appeal." Bronx and New York County Supreme Court Rules, Part 2, Rule VI, in Cahill-Parsons New York Civil Practice (1963 ed.) (1965 Supplement at 233–34). An almost identical rule was adopted for the Fourth Department, effective April 2, 1965. Id. at 218. In the federal sphere, an amendment to F.R.Crim.P. 32(a), proposed by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, would require the sentencing judge to notify all convicted defendants of their right to appeal and the clerk to file a notice if a defendant so requests. 34 F.R.D. 437 (1964).

comings of counsel are a danger confronting all, a point clearly recognized in Coppedge, 369 U.S. 443, n. 5, 82 S.Ct. 917, and those able to retain counsel may forfeit the right to appeal through such oversight or ineptitude as fully as those who are not. See Berman v. United States, 378 U.S. 530, 84 S.Ct. 1895, 12 L.Ed.2d 1012 (1964); Peoples v. United States, 337 F.2d 91 (10 Cir. 1964), cert. denied, 381 U.S. 916, 85 S.Ct. 1540, 14 L.Ed.2d 436 (1965).

Mitchell's case thus is predicated on the failure of the trial judge to advise him or otherwise protect his right to appeal in the face of what he says the judge should have known to be a critical misapprehension of the law and a request for assistance.[4] He relies principally on two recent decisions of the Fifth Circuit holding that when an indigent defendant is abandoned by his trial attorney after judgment and requests the trial judge to appoint another lawyer to assist him in taking an appeal, a failure by the judge to respond, which results in forfeiture of the right to appeal because of the defendant's indigence, constitutes a denial of equal protection by the state. Pate v. Holman, 5 Cir., 341 F.2d 764 (1965); Edge v. Wainwright, 347 F.2d 190 (1965).[5] Mitchell argues this was his situation here, as a matter not merely of fact but of law. The premise of this argument is that in People v. Kling, 19 App.Div.2d 750, 242 N.Y.S.2d 977, 979 (2d Dept. 1963), aff'd, 14 N.Y.2d 571, 248 N.Y.S.2d 661, 198 N.E.2d 46 (1964) (4–3 vote without opinion), cert. denied, 381 U.S. 920, 85 S.Ct. 1539, 14 L.Ed.2d 440 (1965), the Appellate Division stated, "in a noncapital case, the functions and the authority of assigned counsel terminate with the rendition of judgment" and do not extend to the appeal process, for which the appellate court alone is empowered to assign counsel. The next steps in the argument are that

---

4. The State is thus mistaken in urging reversal of the judgment and dismissal of the petition on the basis of decisions of federal courts dismissing appeals of indigent defendants where notice of appeal was not filed within ten days after sentence as required by F.R.Cr.P. 37, even though it was apparent that the untimeliness stemmed from excusable neglect or from misunderstanding between an indigent defendant and his trial attorney. See United States v. Robinson, 361 U.S. 220, n. 1, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960); Berman v. United States, 378 U.S. 530, 84 S.Ct. 1895 (1964); United States v. Isabella, 251 F.2d 223 (2 Cir. 1958); Peoples v. United States, 337 F. 2d 91 (10 Cir. 1964), cert. denied, 381 U.S. 916, 85 S.Ct. 1540 (1965); United States v. Statler, 343 F.2d 121 (2 Cir. 1965). But cf. Fallen v. United States, 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed. 2d 760 (1964). All these decisions are distinguishable in the total lack of evidence that the Government was responsible for an indigent defendant's allowing the time for appeal to expire. In the Peoples case, on which the State places the greatest weight, what the court heard the defendant express, in the presence of counsel, was a desire to take an appeal in *forma pauperis;* the judge had every reason to suppose that the defendant's attorney, in that instance retained, would file the notice of appeal.

5. Norvell v. State of Illinois, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963), also invoked to support Mitchell's claim of denial of equal protection, is less apposite. The Court, finding that no violation of the defendant's constitutional rights occurred where he had the services of an attorney at trial and presumably for purposes of appeal, did declare:

    "if it appeared that the lawyer who represented petitioner at the trial refused to represent him on the appeal and petitioner's indigency prevented him from retaining another, we would have a different case. Cf. Douglas v. People of State of California, 372 U.S. 353 [83 S.Ct. 814, 9 L.Ed.2d 811]" [373 U.S. at 422–423, 83 S.Ct. at 1368].

    As suggested by the citation to Douglas, however, the statement was apparently based on the assumption that counsel was necessary to pursuing an appeal, particularly where a free transcript was not available to the defendant. Here, both access to the transcript and the assistance of counsel for appeal were available to the indigent upon proper application, and the question is how far the state was obliged to insure that such application was effected by advising Mitchell of his rights or taking steps to achieve timely filing of notice.

the sentencing judge in 1952 must be presumed to have known of this limitation on the function of assigned counsel, announced eleven years later, and to have been aware on this account that Mitchell's assigned counsel would not dispel his misconception of his rights; the judge was therefore bound to consider Mitchell's statement of discouragement as invoking assistance which only the court could give.

■ We do not find what the Appellate Division said in Kling quite so decisive as suggested. On closer examination it seems rather a make-weight to support the ultimate conclusion that assigned counsel's failure to fulfill a promise to file a notice of appeal did not constitute state action giving rise to a constitutional claim. The point that the court, and hence the state, is not a surety for the proper performance of counsel, whether assigned or retained, was extensively developed in People v. Tomaselli, 7 N.Y.2d 350, 197 N.Y.S.2d 697, 165 N.E. 2d 551 (1960), and the citation of that case both in the Appellate Division and in the Court of Appeals' affirmance makes clear that this was the true basis for the Kling decision. That such is the understanding of the New York courts is demonstrated by their citation of Kling in subsequent cases involving alleged inadequacies of retained counsel, whose function and authority would not necessarily terminate upon judgment of the trial court. See, e. g., People v. Augusta, 22 A.D.2d 925, 255 N.Y.S.2d 515 (2d Dept. 1964); People v. Weeks, 23 A.D.2d 684, 257 N.Y.S.2d 496 (2d Dept. 1965), aff'd, 16 N.Y.2d 896, 264 N.Y.S.2d 553, 212 N.E.2d 60 (1965). But even if we take the Appellate Division's statement at face value, it does not go to the full extent that Mitchell claims. To say that an assigned counsel's "functions and authority" terminate upon judgment is to say only that he is under no duty *assigned by the court* to file a notice of

appeal;[6] it is not to suggest that he may not file such a notice or advise his client of the requirements of appeal, or indeed that when the client has revealed a misapprehension as to his rights, the attorney is not under a duty to dispel the error before decamping. *Kling* does not imply that there is any such suspension of the general requirements of professional duty but holds merely that the state is not responsible if the duty is not performed.

■ Since Mitchell thus did not make out his case as a matter of law, decision turns on the factual questions of how the judge should have interpreted his statement and whether culpable silence by the judge in fact caused his failure to appeal. Although the conclusion that the state judge knew Mitchell had been and would remain misinformed is plainly a permissible inference from the sentencing minutes, it is not an inevitable one. It is not impossible that the judge, in the midst of a busy calendar, might have thought counsel had informed Mitchell of his rights although discouraging an appeal for reasons that would have applied equally to a nonindigent; and it is quite possible that he believed counsel would give proper advice now that the issue had been sharply raised. Moreover, even if there were a lapse on the part of the judge, this would be inconsequential if in fact Mitchell was properly advised before the thirty-day period for filing a notice of appeal expired; in this connection, it is of some significance that Mitchell's petition contains no allegation that he was not so informed, and there is no evidence in the record that he was not in fact advised. The bare bones of sentencing minutes are meager fare for determining why an appeal was not taken, as Peoples v. United States, supra, 337 F.2d at 93, interestingly shows. A much more solid decision could be reached if testimony were heard from the state trial judge, or from

6. Indeed, the court recognized this possibility in *Kling* when it observed that "If * * * assigned counsel was requested by defendant to file a notice of appeal and

if such counsel agreed to do so, he became, in effect, retained counsel." 19 App.Div.2d at 750–751, 242 N.Y.S.2d at 977, 979.

Mitchell's assigned counsel who, we were told, is available and who, under the circumstances, could testify without restraint of the attorney-client privilege. See 8 Wigmore, Evidence § 2327, at 636, 638 & n. 4 (McNaughton rev. 1961).

## II.

■ Finding a factual hearing desirable, we come to Mitchell's contention that such a proceeding should not be ordered here because the State's response failed to raise any issue as to the facts alleged in the petition. Undesirable as it is for a federal court to set aside a state judgment when any substantial area of uncertainty remains as to facts that may be dispositive of the petitioner's claim, this would be unavoidable if some procedural rule in habeas corpus inexorably commanded the federal judge to do the best he could with whatever scanty materials were before him. We think, however, that not only is there no such controlling directive but that the opposite is commanded.

Procedure in applications for habeas corpus is controlled by 28 U.S.C. §§ 2242 and 2243 and by the Federal Rules of Civil Procedure to the extent that the statutes do not govern, F.R.Civ.P. 81(a) (2). The course set forth by the statute, a rather minor recasting of the Habeas Corpus Act of 1867, 14 Stat. 385, is, in broad outline, as follows: Unless a mere reading of the application convinces the judge that the applicant or person detained is not entitled to relief, he must either "forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted." The recipient of the writ or order must make a prompt return "certifying the true cause of the detention," and the judge must set an early date for a hearing, at which the person detained shall be produced "unless the application for the writ and the return present only issues of law." Thereupon the court shall "summarily hear and determine the facts, and dispose of the matter as law and justice require."

■ The difficulty, which doubtless occasioned what we deem an error by the able and conscientious district judge, derives from obscurities of the original habeas corpus statute, from failure to modify it to conform to the changed use of the writ, and from the fact that the procedure apparently followed in the Southern District of New York, which we have outlined above, does not precisely conform to the statutory language, very likely for sensible practical reasons. In state prisoner cases there is usually little need for certifying "the true cause of the detention" in a formal sense; the petitioner has generally supplied that in his application as Mitchell had here. Rather, the critical question for the state is its response to the petitioner's claim that a vice underlying a conviction regular on its face has caused his custody to be "in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c) (3), a response which must be given if the federal judge is to be able to inquire into "the very truth and substance of the causes of his detention." Johnson v. Zerbst, 304 U.S. 458, 466, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461 (1938). The state will, of course, contradict factual allegations advanced by the petitioner when there is reason to do so. But when it considers the allegations insufficient, it is entitled to attempt to dispose of the challenge to detention as a matter of law. Once the state's response is in hand the judge must make a considered choice among three courses. At the extremes, he may dismiss the petition on the one hand, or grant release of the prisoner on the other, on the ground that the undisputed or incontrovertible facts determine the result as a matter of law. Cf. Walker v. Johnston, 312 U.S. 275, 284, 61 S.Ct. 574, 85 L.Ed. 830 (1941). As an intermediate course, he may direct a hearing to determine the facts before handing down a final disposition.

■■ We find nothing in the statute to compel or even warrant a conclusion that by making an initial submission that, on the facts stated in the petition, relief must be withheld as a matter of law, as was done in the affidavit of the Assistant Attorney General, the State is

precluded, in the event of denial, from having a hearing with respect to possibly decisive facts not admitted by it nor incontrovertibly proved by the record.[7] In ordinary civil litigation, where no comparable state interest is involved, no one would dream of concluding that a defendant who moved to dismiss for "failure to state a claim upon which relief can be granted," F.R.Civ.P. 12(b) (6), authorized the court, in the event of denial, to award judgment against him without answer or trial, or that he was required to say anything in his motion to preserve those rights. We believe this principle is controlling here, see F.R.Civ.P. 81(a) (2), although the exigencies of habeas corpus would make it desirable for a state to indicate, in any submission asking dismissal as a matter of law, the proceedings to which it deems itself entitled if its request should be denied. We hold therefore that a hearing in this case is not merely desirable but mandatory.

If a hearing should show that the state judge ought to have considered Mitchell's statement as invoking his assistance and that Mitchell's right to appeal was forfeited for lack of advice, Mitchell will be entitled to prevail, unless the district judge should consider himself required—a point upon which we do not now pass—to determine whether any appeal by Mitchell would be so plainly without arguable basis that it would have been dismissed as frivolous. All that we now know as to the grounds of appeal is Mitchell's assertion that "the issues raised would have been the general ambiguous verdict as rendered by the trial jury and the judgment pronounced thereupon, as well as the constitutionality of the court using a conviction, had

without prior notice as basis for further punishment, and whatever else a trained counsel would find fault with"; the papers before us give no clue as to the substance of the first and second issues, and the tone of allegation hardly suggests the perpetration of trial errors that had seared Mitchell's soul. There is no such problem in determining the possibility of prejudice from unconstitutional failure to provide for an indigent's appeal as there is in cases of failure to assign counsel at trial or even at plea. In the former instances it is always and in the latter often impossible to determine what prejudice might have occurred; in contrast, an appeal must be on a record available to the federal judge and to counsel assigned to represent the petitioner. Assuming as we do that Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814 (1963), like Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), applies to convictions that had become final before it was rendered, see Smith v. Crouse, 378 U.S. 584, 84 S.Ct. 1929, 12 L.Ed.2d 1039 (1964), it still would not follow that a federal court must vacate a state conviction of many years standing[8] simply to allow a prisoner to take an appeal which demonstrably can have no effect save the expenditure of professional and judicial time.[9] But since that issue may never be reached, we do not decide it at this time.

The judgment is reversed and the cause remanded for a prompt hearing in accordance with this opinion. Mitchell is to have the aid of assigned counsel, who should be a member of the New York bar familiar with New York criminal law and procedure.

---

7. We repeat that Mitchell's petition did not assert that he did not receive timely advice as to his rights. While this omission does not bind Mitchell, it invalidates any argument that the affidavit of the Assistant Attorney General admitted this.

8. The only way an appeal could now be had would be for Mitchell to bring a new *coram nobis* proceeding that would result in vacating the judgment of conviction and remanding him for reimposi-

tion of sentence *nunc pro tunc* on the verdict already had, thereby starting anew the thirty-day period for an appeal. See People v. Hairston, 10 N.Y.2d 92, 217 N.Y.S.2d 77, 176 N.E.2d 90 (1961).

9. See Mishkin, The High Court, the Great Writ, and the Due Process of Time and Law, 79 Harv.L.Rev. 56, 82–83, 87 (1965), noted in Tehan v. Shott, 86 S.Ct. 459 n. 5 (1966).