UNITED STATES of America ex rel.
Lenox J. EDWARDS, Petitioner,

v.

Hon. Harold W. FOLLETTE, as Warden
of Green Haven State Prison, Storm-
ville, New York, Respondent.

No. 67 Civ. 3404.

United States District Court
S. D. New York.

Feb. 26, 1968.

Anthony Marra, and Phylis Skloot Bamberger, Legal Aid Society of New York, New York City, for petitioner.

Louis J. Lefkowitz, Atty. Gen. of New York, by Michael H. Rauch, Asst. Atty. Gen., for respondent.

OPINION

TYLER, District Judge.

Lenox Edwards is presently incarcerated in a New York State prison, having been convicted of first degree murder in March, 1948 and sentenced to life im-

prisonment the following month. He contends that his detention violates his rights under the equal protection clause of the Fourteenth Amendment, in that he was deprived of his right to appeal from his conviction because of his indigency. See Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

Petitioner was represented at trial by three assigned counsel. One of them filed a timely notice of appeal after sentence was imposed. Edwards filed a similar notice at approximately the same time. Shortly thereafter, he received a letter from Frank E. Lammers, one of his trial counsel, who advised him that all three assigned trial counsel had studied the record and concluded that there were no errors committed during the trial that warranted an appeal. He further notified petitioner that the state provided no funds to prosecute an appeal and, in view of the extensive trial record and the unavailability of appointed counsel, the cost of such an appeal would be prohibitive. Lammers concluded that he and associate counsel felt it inadvisable to prosecute an appeal, but cautioned Edwards that the final choice was his.

Petitioner took no further steps to perfect his appeal, which consequently was dismissed by the Appellate Division of the Supreme Court in New York in 1950 for lack of prosecution.[1] Petitioner now requests this court to require the Appellate Division to reinstate his appeal or release him from prison.

Edwards has twice attempted to have the state courts grant him a belated appeal. In the more recent attempt, a *coram nobis* hearing was held by Justice William Lyman of the Supreme Court of New York, Bronx County, who determined that petitioner failed to prosecute his appeal because of his inability to pay the costs that Lammers' letter suggested would be incurred.[2]

Justice Lyman thereupon granted Edwards' motion to vacate his judgment of conviction and suggested he petition the Appellate Division to have his appeal reinstated. Notwithstanding Justice Lyman's ruling, the Appellate Division refused to entertain Edwards' appeal, and that refusal was upheld by the Court of Appeals of New York, People v. Edwards, 16 N.Y.2d 1047, 266 N.Y.S.2d 125, 213 N.E.2d 456. For reasons to be discussed hereinafter, petitioner's application for a writ of habeas corpus is granted, subject to the conditions set forth at the close of this opinion.

The law of a criminal defendant's right to appeal, like many other phases of criminal procedure, has undergone vast changes in the past decade. A number of doctrines have evolved to enable a defendant to test the legality of his conviction on direct appeal, notwithstanding his impecunity or the untimeliness of his application. Though the federal constitution does not provide a specific right

1. Various provisions in the New York Code of Criminal Procedure provide for dismissal of appeals for want of prosecution. See §§ 533, 534, 535. In cases where, as here, the sentence is life imprisonment, these provisions are normally relaxed somewhat. See N.Y.Code Crim. Pro. § 538; People v. Dixon, 230 N.Y. 633, 130 N.E. 923 (1921).

2. Petitioner testified at the hearing that he relied heavily on the advice contained in Lammers' letter (SM–11). Justice Lyman's memorandum suggests that he found Lammers' advice to be erroneous. The parties disagree over the correctness of this ruling. The respondent, endeavoring to show that Edwards' failure to obtain proper appellate review was entirely his fault, urges that a free record, see N.Y.Code Crim.Pro. § 485(8), and free counsel, see People v. Price, 262 N.Y. 410, 187 N.E. 298 (1933), were available if Edwards had made a timely request. On the other hand, relator, seeking to show that a request for *forma pauperis* relief would have been unavailing, claims that in 1948 the Appellate Division had no duty to assign counsel to defendants sentenced to life imprisonment. See People v. Buck, 6 A.D.2d 528, 179 N.Y.S. 2d 1007 (1958). In the view I take of this case, however, the correctness of Lammers' advice and Justice Lyman's ruling is irrelevant.

to appeal, it has been interpreted to guarantee to a defendant the power to take increasing advantage of his statutory appellate rights.

■ The predominant theme of modern case law is that the equal protection clause of the Fourteenth Amendment requires reasonable parity between the kind of appellate review a wealthy defendant and an indigent one receives. See Griffin v. Illinois, supra. Somewhat related is the rule that the right to adequate review cannot be destroyed through the ineffectiveness of counsel. See United States ex rel. Maselli v. Reincke, 383 F.2d 129 (2d Cir. 1967); Wainwright v. Simpson, 360 F.2d 307 (5th Cir. 1966). Finally, there is the relatively unexplored area of the effective deprivation of review through the possibility of greater punishment on appeal. See Fay v. Noia, 372 U.S. 391, 439–40, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); cf. Patton v. North Carolina, 381 F.2d 636 (4th Cir. 1967), cert. denied, 390 U.S. 905, 88 S.Ct. 818, 19 L.Ed.2d 871 (1968).

This last area may be disposed of summarily, since petitioner makes no contention that he avoided review because of the threat of a death sentence if a successful appeal resulted in a new conviction.

The deprivation of the effective assistance of counsel was discussed recently by the Second Circuit in United States ex rel. Maselli v. Reincke, supra, a Connecticut case where the defendant received no appellate review. Though retained trial counsel in that case knew of defendant's indigency, desire to appeal and meritorious claims, he never advised his client of his appellate rights. Instead, the lawyer forwent an appeal because he erroneously believed he could better assist the defendant by negotiating with the state prosecutor with a view toward obtaining a concurrent sentence for his client on another pending charge. The Second Circuit upheld a finding of ineffectiveness of counsel and ordered the state to hear the appeal or release the prisoner.

In the case at bar, trial counsel knew of Edwards' indigency and desire to appeal. No claim is made, however, that Edwards suffered from the ineffective assistance of counsel. Indeed, a suggestion to that effect by Justice Lyman, who heard Edwards' *coram nobis* petition, is refuted by relator in the instant application. See footnote 2, supra. Moreover, since trial counsel were in apparent agreement that petitioner's appeal would not be successful and Lammers had taken the precautionary step of filing a notice of appeal, it would be unrealistic, in my view, to infer that Edwards is entitled to relief upon this theory.

■ The equal protection clause requires that an indigent defendant be granted assigned counsel, Douglas v. California, supra, and a suitable form of record for review, Griffin v. Illinois, supra, if he requests *forma pauperis* relief upon his first appeal as of right. Since both of these requirements have been held retrospective in application, the denial of a timely request by Edwards in 1948 would entitle him now to summary reinstatement of his appeal. See Smith v. Crouse, 378 U.S. 584, 84 S.Ct. 1929, 12 L.Ed.2d 1039 (1964) (*Douglas* retroactive); Eskridge v. Washington, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958) (*Griffin* retroactive). Respondent contends, however, that petitioner's failure to make a timely request in 1948 for *forma pauperis* relief compels a decision that the state did not deprive Edwards of the equal protection of the law. Counsel for the State of New York buttresses this argument by citing two relatively recent Second Circuit habeas corpus decisions in which indigent defendants' failure to file notices of appeal or request *forma pauperis* relief was held to weigh heavily against their untimely appeals. See United States ex rel. Bjornsen v. LaVallee, 364 F.2d 489 (2d Cir. 1966); United States ex rel. Mitchell v. Follette, 358 F.2d 922 (2d Cir. 1966).

■ Nevertheless, mere failure to request that relief does not always bar

a finding that the equal protection rights of a defendant have been violated. See Swenson v. Bosler, 386 U.S. 258, 260, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967); Puckett v. North Carolina, 343 F.2d 452 (4th Cir. 1965); Pate v. Holman, 341 F.2d 764 (5th Cir.), modified on rehearing, 343 F.2d 546 (1965). Whether a state can be found to have violated these federally guaranteed rights depends in large part on the defendant's post-trial activities. Present law affords no relief to a defendant who, when remanded to prison, merely bides his time. The critical question might be stated thus: What steps must an indigent defendant take to invoke the requirement that the appellate court review his conviction in accordance with the demands of the Fourteenth Amendment?

The leading case in the area is Swenson v. Bosler, supra, where, after judgment was rendered, the defendant's trial counsel filed a motion for a new trial and a notice of appeal, and thereupon withdrew. Notwithstanding the absence of counsel, the Missouri appellate court reviewed the conviction on the merits and affirmed. The Supreme Court reversed on the ground that the defendant had failed to receive "the assistance of appellate counsel in preparing and submitting a brief to the appellate court * * *." Id., 386 U.S. at 259, 87 S.Ct. at 997.

■ Though it was unclear whether defendant Bosler in fact had requested the assignment of counsel for his appeal, the Supreme Court ruled it irrelevant.

"[E]ven if such a request had not been made, we do not think its absence would amount to a waiver of respondent's rights. It is now settled 'that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request.' Carnley v. Cochran, 369 U.S. 506, 513, 82 S.Ct. 884, 889, 8 L.Ed. 2d 70. When a defendant whose indigency and desire to appeal are manifest does not have the services of his trial counsel on appeal, it simply cannot be inferred from defendant's failure specifically to request appointment of appellate counsel that he has knowingly and intelligently waived his right to the appointment of appellate counsel." Id., 386 U.S. at 260, 87 S.Ct. at 997.

The test, then, is whether a defendant who lacks appellate counsel has manifested his indigency and desire to appeal. Once he has, the burden shifts to the state to properly process his appeal.

The State of New York contends that neither Edwards' indigency nor his desire for review was manifest in that neither Edwards nor anyone on his behalf brought these circumstances to the special attention of the Appellate Division. Petitioner disagrees, claiming he satisfied his burden under *Swenson* by manifesting his indigency in his affidavit filed with the Bronx County Court, and his desire to appeal by personally filing a notice of appeal. Petitioner's lack of appellate counsel is undisputed.

The Supreme Court in *Swenson*, of course, did not decide how the requirements it laid down could be met. Since the Missouri appellate court decided Bosler's appeal on the merits, the narrow holding of the Supreme Court on this issue was that once an appellate court accepts an appeal from a defendant who has manifested his indigence, it must insure he has counsel to brief and argue the appeal.

■ It seems clear that *Swenson* also applies to cases where the necessary manifestations are made but the appellate court refuses to accept or decide the appeal. Indeed, such circumstances could be viewed as requiring *a fortiori* application of the *Swenson* rule. Thus, the fact that in the case at bar the Appellate Division never took Edwards' appeal cannot be relied upon to show that he failed to meet his burden of going forward with his appeal.

In its narrowest construction, *Swenson* requires a defendant to directly notify the appellate court of both his desire to appeal and his indigence. Respondent urges that we adopt these two steps as the minimum requirements for an indigent

defendant seeking to have his appeal reinstated.

■ Initially, and contrary to respondent's contention, the filing of petitioner's notice of appeal obviously constituted notice to the Appellate Division of his desire to appeal.[3] The fact that the appeal was later dismissed for want of prosecution does not destroy the effectiveness of the notice. Furthermore, the language of *Swenson* would not seem to specifically require that either of the abovementioned factors be manifested to the appellate court. The ultimate inquiry, therefore, is whether Edwards, who manifested his indigency by filing an affidavit of poverty in the trial court and going to trial with three assigned counsel, essentially complied with the requirements of *Swenson*, or whether his appeal was lost when he failed to directly notify the Appellate Division of his indigency. None of the three recent Second Circuit opinions denying reinstatement of untimely state appeals sheds much light on this problem. Two of the petitioners failed to file timely notices of appeal. United States ex rel. Bjornsen v. LaVallee, supra; United States ex rel. Mitchell v. Follette, supra.[4] Though the third did file a timely notice, he was represented by retained counsel at trial and never claimed to be indigent until 15 years after his

appeal was dismissed. United States ex rel. Williams v. Warden, 274 F.Supp. 597 (S.D.N.Y.1967), aff'd per curiam, United States ex rel. Williams v. Deegan, 389 F.2d 1002 (2d Cir. Jan. 15, 1968).

Since the test was laid down by the Supreme Court in *Swenson,* the precise issue here has been raised only twice. The Nebraska Supreme Court reinstated an appeal in a case remarkably similar to the one at bar. There, the indigent defendant informed his assigned trial counsel of his desire to appeal, but when the latter replied he was not obligated to continue his representation, the defendant filed his own notice of appeal. Relying on the double manifestation test of *Swenson,* the court held the criteria had been satisfied and reinstated the appeal. State v. Williams, 181 Neb. 692, 150 N.W.2d 260 (1967).[5] On similar facts, a California intermediate appellate court denied relief. People v. Chung, 60 Cal. Rptr. 455 (Ct.App.1967). In that case, however, an intentional waiver of a known right was found in defendant's failure to request counsel, since he had petitioned the court for assigned counsel on an earlier appeal.

A number of pre-*Swenson* cases permitted reinstatement of appeals in cases roughly analogous to the one at bar. The rationale for granting relief was either

3. Under the procedures unchanged since defendant was convicted, the notice of appeal is sent in duplicate to the trial court clerk, who then transmits one copy to the proper appellate court clerk, indicating the date of filing. N.Y.Code Crim.Pro. § 522.

4. In *Mitchell,* the defendant notified the sentencing judge that he wished to appeal, but had no means to do so. The Second Circuit conditioned relief on a factual showing, upon remand, that "the state judge ought to have considered Mitchell's statement as invoking his assistance and that Mitchell's right to appeal was forfeited for lack of advice * * *." Id. at 929. The court pointedly noted that petitioner had the right to assigned counsel for appellate review and had failed to request it. Id. at 926 n. 5. The case has since been explained by the Second Circuit as one where the court refused to find as a

matter of law that the defendant lacked counsel for his appeal. See United States ex rel. Maselli v. Reincke, supra, at 134 n. 6; cf. Norvell v. Illinois, 373 U.S. 420, 422, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963).

In *Maselli,* however, the Second Circuit suggested that there could be a denial of equal protection, as a matter of law, notwithstanding the fact that the defendant had not made a proper request for appellate counsel, where, as here, trial counsel was unavailable to take an appeal. Id. at 134 & nn. 6 & 7. Such a rule would seem to be required in light of Swenson v. Bosler, supra.

5. See Puckett v. North Carolina, supra, a case decided prior to *Swenson.* On the same material facts as those in State v. Williams and the instant case, the Fourth Circuit found a reinstated appeal required by the equal protection clause.

the ineffectiveness of counsel, see Wainwright v. Simpson, supra; United States ex rel. Maselli v. Reincke, supra, or a violation of equal protection, see Edge v. Wainwright, 347 F.2d 190 (5th Cir. 1965); Puckett v. North Carolina, supra; Pate v. Holman, supra, depending upon whether the defendant's manifestations were made to counsel or to some state official.

 The cases relying on the equal protection clause make no requirement that the state official aware of the defendant's plight be a member or aide of the appellate court. Thus, where, as here, the trial court clerk knew of petitioner's indigency and desire to appeal, see footnote 3, supra, and that appeal was thwarted, reinstatement of the appeal or a release of the prisoner is required.

Even if *Swenson* should be narrowly construed to require the proper manifestations to be made to some state official connected with the appellate court, the unusual circumstances of this case still compel petitioner's appeal to be reinstated. As already concluded, Edwards clearly manifested his desire to appeal to the Appellate Division. That court also would have known of his indigency but for the failure of the trial court clerk to follow the mandate of the New York Criminal Code and prepare and forward the record of the trial. N.Y.Code Crim. Pro. § 485(8). Thus, it can be reasoned that the appellate court also had at least constructive knowledge of petitioner's indigency.[6]

Counsel for petitioner suggests a number of possible errors committed at Edwards' trial in 1948 to show his appeal would not be a waste of the Appellate Division's time. Though I express no view on the ultimate question of whether any of them merit a reversal of Edwards'

conviction, there is no doubt that at least some are non-frivolous.[7] In light of the fact that the Supreme Court reinstated defendant Bosler's appeal in Swenson v. Bosler, supra, without discussion of the merits of the underlying claims he could raise on appeal, it would seem that petitioner need not show a greater likelihood of success on appeal than he has to warrant the granting of a writ in this case. See Anders v. California, 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); United States ex rel. Mitchell v. Follette, supra at 929.

Petitioner's application for a writ of habeas corpus is granted, provided, however, that he may be detained within the respondent's custody for a period of time not exceeding ninety (90) days, upon expiration of which the petitioner shall stand released, unless the State of New York has granted him a right to full appellate review. It is so ordered.

---

6. If the record had been forwarded, the Appellate Division might well have decided the appeal of Edwards' murder conviction, notwithstanding the absence of any briefs or argument. Swenson v. Bosler, of course, holds that such a procedure would have been a violation of petitioner's equal protection rights. Since

Edwards received no appellate review, it is difficult to view the state's case more favorably simply because the clerk of the trial court was remiss in his duties.

7. See pp. 13 et seq. of law memorandum submitted by petitioner's counsel.