## BERMAN *v.* UNITED STATES.

No. 245.   Argued March 26, 1964.—Decided June 22, 1964.

*Bernard B. Polak* argued the cause for petitioner.   On the brief was *Irwin L. Germaise.*

*Theodore George Gilinsky* argued the cause for the United States.   With him on the brief were *Solicitor General Cox, Assistant Attorney General Miller* and *Beatrice Rosenberg.*

PER CURIAM.

The judgment of the Court of Appeals for the Second Circuit is affirmed.   *United States* v. *Robinson,* 361 U. S. 220.

MR. JUSTICE BLACK, with whom THE CHIEF JUSTICE, MR. JUSTICE DOUGLAS, and MR. JUSTICE GOLDBERG join, dissenting.

This case seems to me to be decided on the premise that it is more important that the Federal Rules of Criminal Procedure be slavishly followed than that justice be done.   I cannot agree to any such principle and therefore dissent.

Petitioner was convicted in the United States District Court for the Southern District of New York on two counts—one of possessing counterfeit currency and one of receiving stolen securities.   He was sentenced to concurrent prison terms of two years on each count and a total fine of $2,000.   He decided to appeal.   Federal Rule of Criminal Procedure 37 (a)(2) requires a notice of appeal to be filed within 10 days.   Here the tenth day fell on

Saturday. On the preceding Friday an associate to whom petitioner's attorney had given the notice of appeal for filing left the office with a fever and went home to bed, where he stayed until late Sunday. Because of the associate's illness, the notice was not filed on Saturday; instead, it was filed Monday morning. The Court of Appeals, on motion of the Government, dismissed the appeal on the ground that under Rule 37 (a)(2) and Rule 45 (a) the notice for appeal had been filed one day late. Two days after this dismissal, petitioner, as authorized by Fed. Rule Crim. Proc. 35, moved in the District Court for reduction of the sentence. This motion, with supporting affidavits, pointed out to the District Court that petitioner's appeal had been dismissed because it was one day late. Indeed, a principal ground urged upon the court for acting on the motion was that granting the motion would enable petitioner to appeal from the amended sentence and challenge the validity of the original conviction. The prosecuting attorney objected, saying, "I think he has had his one shot, and it's all over. He has no further right to appeal if the sentence is reduced." The District Judge, stating that his understanding was "contrary" to that of the prosecutor, granted petitioner's motion and, exercising his authority under Rule 35, reduced the sentence on each count from two years to one year and eight months and reduced the fine on each count. The following day, petitioner's counsel filed a second notice of appeal, but again the Court of Appeals granted the Government's motion to dismiss, rejecting the District Court's holding that the time for appeal began to run anew upon the partial rejection of the defendant's Rule 35 motion. This Court now affirms with the simple citation of *United States* v. *Robinson,* 361 U. S. 220. Because I think that *United States* v. *Robinson* should be confined to its particular facts, and for a number of other reasons, I would reverse the judgment of the Court of Appeals.

In this case petitioner, Berman, has contended since the time of his first appeal that evidence introduced at his trial had been obtained as a result of an unlawful search and seizure and that a statement by way of a confession made by him was involuntary and therefore should have been excluded as a violation of the Fifth Amendment. The most perfunctory review of this record shows that neither of those two questions is frivolous.* In *Fay* v. *Noia,* 372 U. S. 391, this Court, after an exhaustive discussion of the question and the citation of many prior decisions of this Court, held that a defendant who had been convicted by use of a coerced confession in a state court could obtain relief in a federal habeas corpus proceeding notwithstanding the fact of a procedural default in the state courts which barred any challenge to the conviction in those courts. It is unthinkable that the same rule should not be applied in federal courts so as to grant relief to a defendant who has been denied a federally guaranteed right because of his failure to comply with the rule which requires the notice of appeal to be filed within 10 days. It is particularly abhorrent to think that such a rule can be enforced in the federal court where, as here, the sole reason for cutting off the defendant's right of appeal to the Court of Appeals is the fact that, after the defendant has decided to appeal, the lawyer to whom he entrusts the duty of physically transporting his notice of appeal to the Court of Appeals fails to get it there because he is taken ill.

---

*In addition to those questions sought to be raised by petitioner in his appeal, this Court's decision in *Jackson* v. *Denno, ante,* p. 368, creates a third. The judge in this case did not himself pass on the voluntariness of Berman's confession; instead, he charged the jury that they must be the "sole judges" of the voluntariness of the confession. In so doing, the judge followed what is called the "New York rule"—a rule which this Court in *Jackson* says is unconstitutional.

Moreover, the Court in the *Robinson* case, which the Court now holds is controlling here, expressly stated, 361 U. S., at 230 n. 14, that the allowance of an appeal after expiration of the prescribed time

"seems unnecessary for the accomplishment of substantial justice, for there are a number of collateral remedies available to redress denial of basic rights. Examples are: The power of a District Court under Rule 35 to correct an illegal sentence at any time . . . ; the power of a District Court to entertain a collateral attack upon a judgment of conviction and to vacate, set aside or correct the sentence under 28 U. S. C. § 2255 . . . ."

It is not strange that the Court in *Robinson* directed its attention to § 2255 proceedings since that section expressly provides that "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

My belief is that, even if Rule 37 (a)(2) is held to require dismissal of this appeal, and I do not think it should be, this Court should remand the case to the Court of Appeals with directions to treat the appeal as an application for collateral relief under 28 U. S. C. § 2255. Such a course was followed in similar circumstances by the Tenth Circuit in *Hixon* v. *United States,* 268 F. 2d 667, where, as here, the appeal was late under Rule 37 (a)(2). And we said in *Bartone* v. *United States,* 375 U. S. 52, 54:

"Where state procedural snarls or obstacles preclude an effective state remedy against unconstitutional convictions, federal courts have no other choice but to grant relief in the collateral proceeding. See *Fay* v. *Noia,* 372 U. S. 391. But the situation is dif-

ferent in federal proceedings, over which both the Courts of Appeals and this Court (*McNabb* v. *United States,* 318 U. S. 332) have broad powers of supervision. It is more appropriate, whenever possible, to correct errors reachable by the appeal rather than remit the parties to a new collateral proceeding."

This is precisely what I think should be done in this case but the Court insists on affirming the harsh action of the Court of Appeals in dismissing the appeal. For a number of reasons, however, I would not affirm that dismissal.

I believe that petitioner's original appeal was timely under Rule 37 (a)(2) if that rule is given a liberal, but permissible, construction more consonant with the ends of justice. The rule says that appeals must be taken "within 10 days" after the entry of the order appealed from. Rule 45 (a) says that the last day of the 10-day period is not to be counted if "it is a Sunday or legal holiday"; in such case, the period runs "until the end of the next day which is neither a Sunday nor a holiday." Neither of these rules says what is to happen if the tenth day is a Saturday, and neither defines what is a "legal holiday." Rule 56, however, sheds some light, for it states that federal courts shall be open for the filing of papers during business hours "on all days except Sundays and legal holidays," and the notes of the Advisory Committee responsible for the language of the Criminal Rules state that "legal holidays" include not only federal holidays but also "holidays prescribed by the *laws of the State where the clerk's office is located."* (Emphasis supplied.) On this point, New York law is specific. In New York City, where the United States District Court for the Southern District of New York sits, the offices of clerks of courts are closed on Saturdays by a state statute which provides: "Whenever the last day on which any paper shall be filed or act done or performed in any such office expires on Saturday, the time therefor is hereby extended

to and including the next business day." N. Y. Judiciary Law, § 282 (1963 Cum. .Pocket Part). The practice is the same in other public offices in New York; for example, Saturday is not a business day in the offices of the county clerk in New York City, N. Y. County Law, § 902, or in county offices in other counties, *id.*, § 206-a (1963 Cum. Pocket Part).

The situation, simply put, is this: The Federal Rules say that an appeal must be filed within 10 days. They obviously intend to extend the time when the tenth day falls upon some day upon which the bar is not able or accustomed to filing legal papers in the courts—such as Sundays and legal holidays. The Rules refer practitioners and courts to state laws defining legal holidays, the better to avoid pitfalls for local lawyers who might otherwise lose their clients' cases because of their reliance upon the holiday closings of local courts. At the very outset of the Rules, their authors proclaimed that the Rules "are intended to provide for the just determination of every criminal proceeding" and so commanded courts to construe them so as "to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." Fed. Rule Crim. Proc. 2. With these principles in mind, how, then, can we take the problem of deciding what happens when the tenth day falls on Saturday—something not expressly covered by the Rules—and treat it as if it were an impersonal, academic exercise in symbolic logic? Here, quite contrary to the Rules' promise, constitutional questions are denied a hearing on appeal because of a draconian interpretation of those very Rules. The associate who became ill stated, by affidavit in the Court of Appeals, that he was not aware that the federal courts did not follow the New York practice of extending time for filing until Monday where it would otherwise run out on Saturday. This affidavit is undisputed. Where the Federal Criminal

Rules are not clear and leave a particular question to a court's interpretation, I fail to see how procedure is simplified, administration of justice is made fairer, and expense and delay are eliminated by choosing the strictest and most rigorous possible interpretation of the Rules.

There is another way in which the Rules could be fairly construed so as to avoid the unjust result the Court here reaches. After the appellate court dismissed the original appeal, petitioner went back to the District Court and made the Rule 35 motion, as stated above. That motion was granted, and the next day petitioner filed a second notice of appeal; again the Court of Appeals dismissed. I think the reasoning of *Corey* v. *United States,* 375 U. S. 169, fits this case. In *Corey,* the petitioner had been committed to custody under 18 U. S. C. § 4208 (b), pending a report from the Bureau of Prisons. Three months later, after the report had been received, Corey was sentenced. Three days after that he filed a notice of appeal, but the Court of Appeals dismissed, holding that the 10 days for appeal had begun running from the time of the original custody order. This Court reversed, holding that an appeal could be taken, at the defendant's option, either from the original order or from the final sentencing. Similarly, in this case I think the fact that petitioner could have appealed from the first judgment of the District Court did not foreclose him from appealing from the second, amended judgment. As we said in *Corey,* 375 U. S., at 175, "simply because a defendant *could* have sought review of his conviction" after the initial order does not mean that Congress intended to deny review from a later order. Furthermore, we have consistently held that once a reviewing court has jurisdiction of one issue of a case (here the reduction of sentence), it may consider questions arising in earlier stages of the case. See *Mercer* v. *Theriot,* 377 U. S. 152, 153; *Urie* v. *Thompson,* 337 U. S. 163, 171–173.

Oddly enough, because the Court now holds there is no appeal from the second order of the District Court, this man convicted of a crime is worse off than a civil litigant, whose timely motion under Fed. Rule Civ. Proc. 73 to "alter or amend" the judgment would cause the time for an appeal to run anew. Moreover, even a motion which is not timely has been held sufficient in civil cases under Rule 73's provision dealing with "excusable neglect." See *Wolfsohn* v. *Hankin,* 376 U. S. 203; *Thompson* v. *Immigration and Naturalization Service,* 375 U. S. 384; *Harris Truck Lines, Inc.,* v. *Cherry Meat Packers, Inc.,* 371 U. S. 215. Surely the rule in criminal cases should not be more strictly applied. Even more odd is the fact that this petitioner, because he had a lawyer, is worse off than a defendant who does not have a lawyer. Cf. *Fallen* v. *United States, ante,* p. 139. The same rule which is being used here to cut off petitioner's appeal says that when a defendant not represented by counsel is sentenced, "the defendant shall be advised of his right to appeal and if he so requests, the clerk shall prepare and file" the notice of appeal for the defendant. Here petitioner took the equivalent steps: he executed the notice of appeal for his lawyer on Thursday. But the lawyer's associate fell ill, and the Court of Appeals treated Saturday in a way most apt to confuse and trap even a perfectly healthy New York lawyer familiar with local New York practice. Having several ways in which it could have heard the merits of petitioner's constitutional claim, the Court of Appeals, now followed by this Court I regret to say, chose to interpret the Rules not so as to reach, but rather to defeat, a "just determination" of this case.

Throughout history men have had to suffer from legal systems which worshipped rigid formalities at the expense of justice. It is for this that we remember the Laws of the Medes and Persians and the injustice spawned by the tortuous labyrinth of common-law pleading which it

took the creation of courts of equity to counteract. Of course, any civilized system of judicial administration should have enough looseness in the joints to avert gross denials of a litigant's rights growing out of his lawyer's mistake or even negligence in failing to file the proper kind of pleading at precisely the prescribed moment. Cf. *Link* v. *Wabash R. Co.*, 370 U. S. 626, 636 (dissenting opinion). The Criminal Rules were framed with the declared purpose of ensuring that justice not be thwarted by those with too little imagination to see that procedural rules are not ends in themselves, but simply means to an end: the achievement of equal justice for all. I have no doubt that the disposition of this case would have been very congenial to the climate of Baron Parke's day. I confess, however, that I am uncomfortable with the notion that courts exist to fashion and preserve rules inviolate instead of to apply those rules to do justice to litigants.