**Otis E. TURMAN, Petitioner,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.**

**Civ. A. No. CA 3–1829.**

United States District Court
N. D. Texas,
Dallas Division.
Aug. 2, 1967.

Larry C. Roseborough, Dallas, Tex., for petitioner.

Crawford C. Martin, Atty. Gen. of Texas, Austin, Tex., for respondent.

OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

Otis E. Turman brings this habeas corpus action pursuant to 28 U.S.C.A. § 2241, attacking the validity of a judg-

ment of conviction for the offense of statutory rape, entered against him by the Criminal District Court of Dallas County, Texas, on February 22, 1961. Turman is presently serving a 50-year sentence under such conviction in the Texas Department of Corrections. He alleges that certain of his rights under the Constitution of the United States were violataed in that (1) he was arrested without a warrant or probable cause; (2) he was aggrieved by an unlawful search; (3) at the time he confessed to the crime an attorney was not present to counsel and advise him; and (4) he was deprived of the right to appeal his conviction.

On Sunday, August 14, 1960, the parents of 11-year old Patsy Ann Bridges reported to the police that their daughter had been kidnapped. An extensive search for the girl ensued, which was covered by the press, radio, and television in Dallas and surrounding counties. The following day, a neighbor of Turman's, having seen the girl's picture on television, observed her in the yard behind Turman's house in the City of Dallas. The neighbor called this information in to a television station which in turn called the Dallas Police Department. The police transmitted the information to the sheriff's office which was conducting the investigation. Late Monday evening, two deputy sheriffs went to Turman's house. They did not have a search warrant nor an arrest warrant. When they knocked on the door one of the officers heard some rustling noises from within. In a few moments Petitioner opened the door clad only in his briefs, and according to Deputy Sheriff Pierce, invited the officers in. From the doorway one of the deputies had observed a young girl on the couch in the living room, apparently asleep. When the officers awoke the child, she identified herself as the missing Bridges girl.

Turman was taken to the sheriff's office. The deputies seized a pair of Petitioner's undershorts, some bed linens, and a bottle of phenobarbital from his house. He was placed in the county jail around 1:30 o'clock on Tuesday morning.

At this point, the testimony of Petitioner and of the officers of the sheriff's department begins to diverge. Turman recounted that he was interrogated on and off, at one to two hour intervals for the next 24 hours. Bill Decker, Sheriff of Dallas County, testified that shortly after noon on Tuesday he asked two of his deputies to go and talk to Turman, and that some ten minutes later they returned and told him that Petitioner wanted to make a statement. One of the deputies who talked to Petitioner at Decker's request testified that to the best of his knowledge no one had talked to or questioned Petitioner prior to noon on that Tuesday. Decker, the deputy who talked to Turman, the deputy who typed Turman's statement, and a television newsman who witnessed the signing of the confession, all testified that the confession was given by Turman at approximately 1:00 o'clock on Tuesday afternoon. Deputy Lewis, who first talked to Turman at Sheriff Decker's direction, testified that Petitioner was cooperative from the beginning.

Petitioner's trial was had before a jury and Turman was represented by an able and experienced attorney. The confession and the pair of undershorts were introduced in evidence against him. In this "confession" Turman denied he had sexual intercourse with the girl, saying that he desisted in this effort when she said that "it hurt her". The contentions made by Turman will be hereinafter discussed.

 "When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest 'would warrant a man of reasonable caution in the belief' that an offense has been committed." Beck v. State of Ohio, 379 U.S. 89, 85 S. Ct. 223, 13 L.Ed.2d 142 (1964); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Admittedly, when the deputies approached the Petitioner's house on that Monday night they

were only following a lead. That the information the deputies had within their knowledge at this time was insufficient to warrant an arrest without a warrant cannot be doubted. Beck v. State of Ohio, supra; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). But at such time as the girl identified herself to the officers as the individual for whom they were searching, the officers had facts within their knowledge as would "warrant a man of reasonable caution in the belief" that Petitioner was in the act of committing the offense of kidnapping. No contention is made by Petitioner that the deputies came about this probable cause illegally in that they gained unlawful entrance to his house before they obtained the girl's identity from her. See United States v. Paroutian, 299 F.2d 486 (2 Cir.1962). Indeed, the testimony of Petitioner himself reflects that he invited the officers into the house after they had identified themselves. Petitioner's arrest was not violative of the Fourth Amendment.

It follows that the seizure of the aforementioned items, incidental to the valid arrest, was lawful. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), and these items were constitutionally admissible at Petitioner's trial. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

Turman is not in a position to rely upon his lack of assistance of counsel at the time he made his confession as an independent ground for relief. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, decided five years after his conviction, does not apply retrospectively. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

Even considering Petitioner's lack of counsel at the time he made his confession as a circumstance against the Respondent on the issue of the voluntariness of the confession (which issue I shall consider because although not alleged by Petitioner in his application, it is substantially raised by his testimony), I am not of the opinion that his confession was in any degree the product of an involuntary action on his part. Because of the notoriety attending this case at the time it began, Sheriff Decker, himself, directed the investigation and conducted the interrogation of Turman. Although Decker got out of bed and went to his office when he received word that Turman had been taken into custody, he made no effort to interrogate him until noon the next day. The testimony of those present at the time Turman signed the confession supports the finding that he voluntarily made the statement. He showed no signs of weariness or intimidation and made no statements at that time which would intimate that he bore the same attitude toward the statement then as he does now. Accordingly, I find Petitioner's confession to be the product of his own volition, unfettered by custodial or police influences.

Petitioner's contention that he has a right to appeal, which was denied him, is without merit. The mandate of the Constitution does not require that persons convicted of a crime be afforded an appeal as a matter of right. McKane v. Durston, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894). And although a state that does grant appellate review is bound by the Due Process and Equal Protection Clauses not to discriminate against a defendant at that stage of the criminal proceedings, Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), I do not believe that the failure of the trial court to advise Petitioner of his right to appeal constituted, under the facts of this case, a discrimination against him.

Petitioner's uncle hired trial counsel to defend him. After the case was tried and within the statutory time allowed by Texas law, counsel filed a motion for new trial.[1] The question of whether to

---

1. Vernon's Ann. Texas Code of Criminal Procedure, Article 40.05.

appeal Petitioner's conviction was discussed by counsel and the uncle. When the latter was unable to produce sufficient funds to retain the attorney on appeal, he informed the attorney to withdraw the motion for new trial and accept sentencing. On the day set for sentencing, Turman and his attorney appeared in court. The attorney testified that he told Petitioner that his uncle could not afford to retain him for appeal and therefore he was going to withdraw the motion for new trial,[2] which meant that he would be sentenced. This was agreeable to Petitioner. The attorney stated that he did not inform Turman that he could appeal his case and he did not hear the trial judge so admonish him when they stood before the bench at the time of sentencing, although he did state that he understood that Turman and his uncle had discussed appealing his case. Petitioner was then sentenced without objection on his part.

■ From the evidence as it evolved at the evidentiary hearing, I cannot bring myself to believe that Turman knew he could appeal his conviction, let alone that he intelligently waived doing so. If the Constitution gave a judge the whimsical commission to grant a writ of habeas corpus in every case in which he found himself in sympathy with the Petitioner, it would be done in this case. But such authority is not conferred. Appellate review has become so ingrained in the history of our judicial system that it contravenes one's sense of fairness to see a convicted man stand before a judge and be sentenced without the knowledge that he has the right to appeal his conviction. Although the state is obligated to inform the criminal defendant of his constitutional rights when such rights are of a fundamental nature, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the only standard by which the state is bound when it in-

corporates a nonfundamental right into its judicial process is that of procedural due process. Griffin v. People of State of Illinois, supra; Cole v. State of Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L. Ed. 644 (1948). And while deprivation of procedural due process in a right to appeal a case such as this most often takes the form of discrimination by the state against the convicted because of his poverty, Anders v. State of California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), Eskridge v. Washington State Board, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958); Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L. Ed.2d 892 (1963), it is difficult to hold the state accountable for such discrimination when it is not advised nor does it have knowledge of the poverty of the defendant.

In Norvell v. State of Illinois, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963), the defendant was convicted of murder in 1941. He had a court-appointed attorney. For reasons unknown, he did not pursue an appeal. In 1956, after the rendition of Griffin v. People of State of Illinois, supra, Norvell filed a motion to have prepared a transcript of his trial so that he could obtain appellate review of his conviction. When it was determined that the reporter who transcribed Norvell's trial had died some years before, there was an attempt to reconstruct the testimony by recalling the witnesses who testified at the trial, none of whom could recall the facts as they occurred in 1941. Thereafter, the trial judge denied Norvell's motion for the transcript.

In holding that Illinois did not deny the defendant due process of law or the equal protection thereof, the Court stated, 373 U.S. at 423, 83 S.Ct. at 1368,

"When, *through no fault of the State*, transcripts of criminal trials are no longer available because of the

---

**2.** Under Texas law, the motion for a new trial is not a prerequisite to perfecting an appeal. Texas Code of Criminal Procedure, Article 44.24.

death of the court reporter, some practical accommodation must be made." (Italics added)

Such accommodations must be herein made. The State of Texas cannot be held at fault for the failure of Petitioner's attorney to perfect his appeal. Self-employed counsel is not an officer of the state and no duty devolves upon the state court to assure itself that counsel employs every procedural right to which his client may be entitled. Berg v. Cranor, 209 F.2d 567 (9 Cir.1954); De Maurez v. Swope, 104 F.2d 758 (9 Cir.1939); Cf. White v. Beto, 322 F.2d 214 (5 Cir.1963). Nor can the fact that counsel for petitioner failed to advise him of his right to appeal or failed to inform the court that he was withdrawing from the case because of his client's indigency be deemed action under color of state law. Indeed, the right to appeal may be forfeited through oversight or ineptitude on the part of such counsel. See Berman v. United States, 378 U.S. 530, 84 S.Ct. 1895, 12 L.Ed.2d 1012 (1964); Peoples v. United States, 337 F.2d 91 (10 Cir. 1964), cert. den., 381 U.S. 916, 85 S.Ct. 1540, 14 L.Ed.2d 436 (1965).

There remains the consideration of whether the state trial judge was under a procedural duty ordained by the Due Process Clause to affirmatively advise petitioner of his right to appeal under Texas law.

Turman and his attorney stood before the trial judge at the time he was sentenced. Neither of them intimated to the court at that time why the motion for a new trial was being withdrawn or in any way attempted to communicate petitioner's indigency to the court. Under these circumstances the trial judge cannot be deemed to have been put on notice of the facts leading up to the sentencing. Consequently, there is not presented the case wherein the trial court should have considered certain statements of the defendant at the time of sentencing as tantamount to invoking the court's assistance in seeking post-conviction relief from the judgment and sentence, in which case it is arguable that the right

to appeal has been frustrated by state action. See United States ex rel. Mitchell v. Follette, 358 F.2d 922 (2 Cir.1966).

The minimum procedural requirements necessary to satisfy due process depend upon the circumstances and interests of the parties involved. Dixon v. Alabama State Board of Education, 294 F.2d 150 (5 Cir.1961).

" * * * 'due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances. Expressing as it does in its ultimate analysis respect enforced by law for that feeling of just treatment which has been evolved through centuries of Anglo-American constitution history and civilization, 'due process' cannot be imprisoned within the treacherous limits of any formula. Representing a profound attitude of fairness between man and man, and more particularly between the individual and the government, 'due process' * * * is a delicate process of adjustment inescapably involving the exercise of judgment by those whom the Constitution entrusted with the unfolding of the process." Mr. Justice Frankfurter, concurring in Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123 at 162, 163, 71 S.Ct. 624 at 643, 644, 95 L.Ed. 817 at 849 (1951).

Under the foregoing facts, I cannot conclude that the state trial judge faltered in the exercise of that "delicate process of the adjudgment of fairness between the individual and the government."

█ Procedural due process does not compel the state trial judge to advise a criminal defendant of his right to appeal under state law. United States ex rel. Bjornsen v. LaVallee, 364 F.2d 489 (2 Cir.1966); United States ex rel. Maselli v. Reincke, 261 F.Supp. 457 (D. Conn.1966); Cf. Rayne v. Warden, Maryland Penitentiary, 198 F.Supp. 552 (D.Md.1961).

Through no fault of the State of Texas, Petitioner's right to an appeal, as

provided for under the laws of Texas, has been forfeited. Most certainly, Petitioner would have had the opportunity to avail himself of the full scope of procedural rights afforded him by the State of Texas had the trial judge advised him of his right to appeal. Indeed, such an admonition would have been commendable.[3] United States ex rel. Bjornsen v. LaVallee, supra. The fact that there were no constitutional infirmities in petitioner's trial does not mitigate against the possibility of the existence of reversible error during such trial of which the state appellate court could have taken cognizance had petitioner known of his right to appeal and pursued the same.

One further consideration should be discussed. The notes which the reporter transcribed at petitioner's trial in 1961 have since been destroyed. Article 2324, Vernon's Ann.Texas Revised Civil Statutes, requires that court reporters keep their notes for a period of one year from the date of transcription. Of course, a finding that the state was not at fault for the forfeiture of petitioner's right to appeal moots the question of its liability, if any, for the non-preservation of the reporter's notes which was in issue before the Court in Norvell v. State of Illinois, supra. Nonetheless, had such invidious discrimination existed in the present case at the time of petitioner's sentencing, the responsibility could well have been that of the State. A re-trial of petitioner some seven or eight years after the occurrence of the offense would undeniably involve certain of the disadvantages incumbent in retrospective application of court decisions involving constitutional rights. See Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Tehan v. United

States ex rel. Shott, 382 U.S. 406, 86 S. Ct. 459, 15 L.Ed.2d 453, reh. den. 383 U.S. 931, 86 S.Ct. 925, 15 L.Ed.2d 850 (1966); Johnson v. State of New Jersey, supra. The threat of such antiquated re-trial is present in all cases in which an appeal is not taken and a record not developed. Wisdom might dictate that preservation of such court records, regardless of the cumbersome burden it may entail, will result in the fairest disposition of allegations of deprived rights subsequent to trial, as well as constitute a saving of expense to the State.

The Application for Writ of Habeas Corpus is denied.

---

3. Federal Rule of Criminal Procedure 32 (a) (2), as amended February 28, 1966, effective July 1, 1966, requires federal district judges to advise defendants upon conviction that they are entitled to the right to appeal their conviction. Two observations support the conclusion that such right is non-constitutional: (1) the fact that the rule was not promulgated until 1966 evidences the long-standing historical concept that such right is not an integral element of due process, and (2) the rule was adopted pursuant to the Supreme Court's supervisory power over the lower federal courts, which power the Court disavows extending to state tribunals. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).