**UNITED STATES ex rel. Wilber G. SMITH**

v.

**Alma DiBELLA, Chief Clerk, Circuit Court, 14th Circuit, Hartford, Judge John J. Daly, Chief Judge, Circuit Court, Cornelius J. Shea, Chief Prosecutor, Circuit Court, Patrick J. Hogan, Sheriff, Hartford County, Thomas J. Vaughan, Chief of Police, Hartford, and Daniel A. Leone, Warden, Community Correctional Center, Hartford.**

**Civ. No. 13862.**

United States District Court, D. Connecticut.

June 5, 1970.

Joel M. Ellis, Hartford, Conn., for petitioner.

Cornelius J. Shea, Chief Prosecutor, Circuit Court, 14th Circuit, Hartford, Conn., for respondent.

## MEMORANDUM OF DECISION ON PETITION FOR A WRIT OF HABEAS CORPUS

BLUMENFELD, District Judge.

In this petition for a writ of habeas corpus, petitioner claims to be in custody in violation of the Constitution by reason of a denial of his right to an appeal from a criminal conviction. He seeks release from custody unless within a reasonable time he is granted an appeal by the state courts. His asserted grounds for relief are (1) a violation of his sixth amendment right to effective assistance of counsel, and (2) deprivation of his fourteenth amendment right to due process.

### I.

The essential facts are not disputed. After a joint jury trial with other defendants in the 14th Circuit Court at Hartford, Connecticut, petitioner, on November 10, 1967, was convicted of breach of peace and sentenced to thirty days imprisonment, execution to be suspended after ten days. Along with his co-defendants, who were represented by other counsel, he filed a timely appeal and was released on his own recognizance. On October 24, 1969, the trial court filed its finding, which is a necessary part of the record under Connecticut appellate procedure. Conn.Prac. Book § 980. To conform with Connecticut practice, the next step required of the petitioner was to file within two weeks either a motion to correct the trial court's finding or, if no correction was sought, assignments of error. *Id.* §§ 981, 987. Neither having been done, the state, on November 17, 1969, moved to dismiss the appeal for the procedural failure. After a hearing,[1] this motion

---

1. The required papers had then been filed and a brief, outlining the facts surrounding the late filing, was submitted. From that, which was unchallenged, it appeared that an associate in the firm of lawyers who were representing the petitioner on the appeal left to join a new law firm shortly before the time for filing the motion to correct the finding expired. When the failure to timely file the motion was made known to both that firm and the associate by the notice of the state's motion to dismiss the appeal, the file of the petitioner's case was transmitted to the associate and his new firm—with the petitioner's authority. The merits of the

was peremptorily granted by the Appellate Division of the Circuit Court on January 8, 1970, "[s]ince the motion to dismiss was filed within ten days after the ground for dismissal arose." Smith's motion for reargument was denied on January 26, 1970, and his petition for certification to the Connecticut Supreme Court was denied on February 18, 1970.

Petitioner obtained a stay of execution from the state court, which was once renewed and which was finally to terminate on May 25, 1970. While that stay was in effect, in an obvious attempt to gain a renewed right to appeal by obtaining a new date for the judgment of conviction, petitioner filed in the Circuit Court a motion to vacate the sentence and to resentence. That motion was denied on May 21, 1970, by Judge Lexton. No appeal from that ruling has been taken.

The following day, petitioner filed this petition accompanied by an ex parte application for a stay of execution. The stay was granted pending further proceedings and a hearing scheduled. That hearing has now been completed.

## II.

 Petitioner, while not now incarcerated but released on his own recognizance, is sufficiently "in custody" for purposes of federal habeas corpus. See Marden v. Purdy, 409 F.2d 784, 785 (5th Cir. 1969); Duncombe v. New York, 267 F.Supp. 103, 109 n. 9 (S.D.N.Y.1967); cf. Jones v. Cunningham, 371 U.S. 236, 239, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). He has exhausted all presently available state remedies. Although he did not explicitly raise in the state court constitutional objections to the denial of his right to appeal until the most recent motion to vacate sentence and to resentence, it is apparent

question of which lawyer or firm of lawyers was responsible for the failure to file the motion to correct the finding on time, or whether, under the circumstances,

that those constitutional claims were implicit in his defense to the state's motion to dismiss the appeal. Judge Lexton, in denying petitioner's motion to vacate sentence, concluded:

"This Court does not agree with the defendant's claim that he is now presenting a new constitutional issue as set forth in his motion and presented in oral argument. All relevant factors, factual and legal, were before the other two Courts [Appellate Division of the Circuit Court and Supreme Court] in exactly the same way as they are before this Court." Connecticut v. Smith, 5 Conn.Cir. 474, 256 A.2d 793 (14th Cir.Ct. May 21, 1970).

I agree. Cf. Angel v. Bullington, 330 U.S. 183, 190, 67 S.Ct. 657, 91 L.Ed. 832 (1947). Since the state's motion to dismiss the appeal was granted, and certification to the Supreme Court denied, I conclude that the claims raised by this petition have been passed upon by the highest state court. Petitioner has exhausted state remedies and it would serve no useful purpose to require him to appeal the denial of his motion to vacate sentence. See United States ex rel. West v. LaVallee, 335 F.2d 230 (2d Cir. 1964); United States ex rel. DeNegris v. Menser, 247 F.Supp. 826, 829 (D.Conn.1965), aff'd, 360 F.2d 199 (2d Cir. 1966).

## III.

The core issue presented by this petition is whether Smith was denied due process of law by the forfeiture of his right to appeal from his criminal conviction. His appeal was dismissed by application of a state procedural rule requiring an appellant to submit a motion to correct the trial judge's finding or an assignment of error within two weeks after the judge's finding is filed.

the failure was excusable was not explored or resolved by the state court. Nor have I made any findings bearing on those issues.

The consequences of failing to file are set out in a corollary rule:

"The appellate panel may, on motion of any party or of its own motion, dismiss any appeal for lack of jurisdiction, failure to file papers within the time allowed, failure to prosecute with proper diligence or any other proper ground. Such motion shall be filed within ten days after the ground for dismissal arose, provided that any motion based on lack of jurisdiction or failure to prosecute with proper diligence may be filed at any time." Conn. Prac. Book § 976.

*Cf.* Loomis v. Zoning Commission, 144 Conn. 743, 746, 133 A.2d 906 (1957).

It is clear that rigid adherence to the procedural rule to dismiss Smith's appeal denied him an appeal without opportunity to be heard or to offer any explanation of the default. Stressing the fact that justification of the default is allowed at a later time (depending only on whether the state's prosecutor acts quickly enough to prevent a hearing) and the interests of the appellant in the fundamental right to an appeal on which his liberty depends, the petitioner argues that peremptory application of the rule in this case to forfeit his right to appeal operated to deny him due process. His contention is that the rule's consequences are so severe to a convicted defendant when weighed against its necessity to the state, that to enforce it without affording an appealing defendant an opportunity to be heard is such a denial of fundamental fairness as to amount to a deprivation of due process.[2]

## IV.

Petitioner was represented by counsel on appeal, and it was counsel's obligation to see that the appropriate papers were filed on time. A state court's holding that failure of counsel to file those papers on time operates of itself to foreclose appeal is thus tantamount to a finding that the appellant was inadequately represented by counsel. By rigid application of the rule to exclude any opportunity to show excusable neglect, or to remedy the default, petitioner's counsel has been conclusively deemed ineffective by the Connecticut Circuit Court. Whether in fact counsel was ineffective, a finding I expressly do not make, is irrelevant in view of the consequences to the petitioner. *Cf.* United States ex rel. Smith v. McMann, 417 F.2d 648, 655 (2d Cir. 1969) (en banc).

Speaking of situations in which criminal defendants' rights are forfeited for default of their lawyers, Professor Moore, reknowned author of an authori-

---

2. Petitioner does not raise here the merits of his appeal from the breach of peace conviction, which itself raises federal constitutional claims. *Cf.* Bachellar v. Maryland, 397 U.S. 564, 90 S.Ct. 1312, 25 L.Ed.2d 570 (U.S. Apr. 20, 1970); Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949); Cantwell v. Connecticut, 310 U.S. 296, 309–10, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). Where consideration of federal questions in the state court is foreclosed by defaults in compliance with state procedural rules, implementation of the federal right is prevented, and when and how those defaults also preclude federal court consideration of those federal questions "is itself a federal question." Henry v. Mississippi, 379 U.S. 443, 447, 85 S.Ct. 564, 567, 13 L.Ed.2d 408 (1965). "[A] litigant's procedural defaults in state proceedings do not prevent vindication of his federal rights unless the State's insistence on compliance with its procedural rule serves a legitimate state interest." *Id. See* Staub v. City of Baxley, 355 U.S. 313, 319–20, 78 S.Ct. 277, 2 L.Ed. 2d 302 (1958). If the federal claim is presented to a federal court and that court "finds the procedural default ineffective, [it] will itself decide the merits of [the] federal claim, at least so long as the state court does not wish to do so." Henry v. Mississippi, *supra*, 379 U.S. at 452, 85 S.Ct. at 570.

In the instant case, because petitioner has not raised any federal claims here which may be involved in the merits of his appeal, there is no occasion for me to apply these principles. Petitioner's sole claim for relief in this habeas corpus petition is that the forfeiture of his right to appeal denied him due process.

tative treatise on procedural rules indignantly condemned such a result:

"It is monstrous to say in any case that a person must lose a valuable right simply because an officer of the court has blundered. That result is tolerated in civil cases only because it is conceived to be desperately necessary if litigation is to end. But '[c]onventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged.' [Sanders v. United States, 373 U.S. 1, 8 [83 S.Ct. 1068, 10 L.Ed.2d 148] (1963)] * * *. [T]he proposition that a party must suffer for the mistake of his attorney * * * is not necessary in the context of the time for appeal in a criminal case. The government is not prejudiced by a slightly tardy appeal. Why should the defendant lose a valuable right to the advantage of no one simply because his attorney, an officer of the court, makes a mistake? The Supreme Court has already held that a defendant who 'did all he could' to effect timely filing of a notice of appeal was entitled to be heard. [Fallen v. United States, 378 U.S. 139, 144 [84 S.Ct. 1689, 12 L.Ed.2d 760] (1964)]. What more can a defendant do than to entrust his rights to an officer of the court?" 9 Moore's Federal Practice ¶ 204.19 (1969).

See also, Morris v. Florida, 393 U.S. 850, 89 S.Ct. 84, 21 L.Ed.2d 120 (1968) (dissenting opinion of Mr. Justice Black); Berman v. United States, 378 U.S. 530, 84 S.Ct. 1895, 12 L.Ed.2d 1012 (1964) (dissenting opinion of Mr. Justice Black); Christoffel v. United States, 88 U.S.App.D.C. 1, 190 F.2d 585 (1950).

In cases where an actual finding of lack of effective assistance of counsel has been made, courts have held that

"[f]undamental fairness requires that [the petitioner] be granted the rights which were lost to him through no fault of his own. * * * By continuing [his] imprisonment * * * the State courts have affirmatively deprived [him] of the due process constitutionally his under the Fourteenth Amendment." United States ex rel. Maselli v. Reincke, 383 F.2d 129, 134–35 (2d Cir. 1967).

See also, Gairson v. Cupp, 415 F.2d 352 (9th Cir. 1969); Wright v. Boles, 303 F.Supp. 872 (N.D.W.Va.1969); Vena v. Warden, No. 150625 (Super.Ct.Htfd. Cty. July 25, 1967).

There is no persuasive reason for a different result where rigid adherence to procedural rules has the same effect as a finding of incompetence. Fundamental fairness is equally lacking where in one fell swoop the petitioner's right to appeal is forfeited by counsel's default. The adverse effect upon the petioner's rights would not be any greater if counsel had been covertly disloyal, cf. Desmond v. United States, 333 F.2d 378 (1st Cir. 1964), or guilty of conduct which rendered a trial a "mockery of justice." Cf. Kruchten v. Eyman, 406 F.2d 304, 312 (9th Cir. 1969); United States ex rel. Maselli v. Reincke, supra, 383 F.2d at 132. Nor should he be made to suffer a more severe penalty.

The unfairness of this kind of procedural forfeiture is especially apparent in this case. Petitioner's interest in his right to appeal on which may depend his liberty [3] far outweighs the interest of the state in adhering to its appellate procedure. Selective emphasis in the rule on the time when the oppos-

3. The shortness of Smith's sentence should not in any way be regarded as diminishing his interest in securing his liberty through appeal. As the Supreme Court has recently observed: "Many deep and abiding constitutional problems are encountered primarily at a level of 'low visibility' in the criminal process—in the context of prosecutions for 'minor' offenses which carry only short sentences." Sibron v. New York, 392 U.S. 40, 52, 88 S.Ct. 1889, 1897, 20 L.Ed.2d 917 (1968).

ing party signals a failure to meet a time schedule saps the attempt to justify the rule as being founded on the state's interest in clearing its docket. The criteria of relevance of a forfeiture of all right to appeal to a motion only within the ten-day interlude has elements of the long-discredited gamesmanship theory of rule compliance which tends to obscure any valid interest in orderly procedure.

Petitioner's co-defendants, also convicted, are now prosecuting their appeals. The questions they raise present substantially the same issues as those presented by Smith's appeal, differences in their cases appear to be only in the type of conduct they engaged in.[4] Moreover, the required papers have now been filed, and any delay, expense, or unfairness which would result to the state by allowing the record on Smith's appeal to be completed is at best minimal. The appeals would be heard at the same time. They arose out of the same trial.

■ I conclude that under the circumstances presented by this case, forfeiture of petitioner's right to appeal is so lacking in fundamental fairness as to constitute "a miscarriage of justice which should not be permitted to occur." Christoffel v. United States, *supra*, 190 F.2d at 594.

### V.

■ At the hearing, the state contended that petitioner had deliberately by-passed orderly state procedure within the meaning of Fay v. Noia, 372 U.S. 391, 438–39, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). No evidence even remotely tending to support such a contention was adduced. Petitioner Smith testified, without contradiction, that he instructed his counsel to pursue an appeal, that he was neither consulted about dropping

the appeal nor asked whether he wanted to drop it, and that he relied on counsel to protect his rights. He further testified that he had no knowledge that he was in jeopardy of losing his appeal until after the time for filing the appropriate papers had passed, a fact that he learned first through a newspaper story. Moreover, it appears that soon after he learned of the procedural default, he took steps to remedy it, including engaging new counsel, and that the required papers were in fact filed eight days after the deadline. There is no evidence that Smith collaborated with his prior counsel, as the state contends, in a policy of "brinkmanship" in getting papers filed throughout the course of this prosecution. In Fay v. Noia, *supra*, 372 U.S. at 439, 83 S.Ct. 822, the Supreme Court adopted the rule of Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), that waiver of a constitutional right must be defined in terms of "an intentional relinquishment * * * of a known right or privilege," which "depends on the considered choice of the petitioner." Fay v. Noia, *supra*, 372 U.S. at 439, 83 S.Ct. at 849. Under these standards a finding of waiver cannot be supported by nothing more than the failure to appeal at the proper time.

### VI.

I conclude that the dismissal of his appeal has denied the petitioner due process of law. Petitioner is entitled to federal habeas corpus relief. To effectuate his right to appeal, a writ shall issue that petitioner shall be discharged from custody unless within twenty (20) days the state affords the petitioner a reasonable opportunity to file the papers necessary to complete the record for the appeal already filed.[5]

So ordered.

---

4. These differences are all present on the record made by the co-defendants. The charge challenged is the same.

5. It appears that the primary thrust of the motion to correct the finding already made is to have it reflect that the defendant Smith took exceptions to the charge. The

filing of assignments of error need not be delayed until the motion to correct is acted upon, but may include as one ground the failure to grant the motion to correct. If the motion is granted, that particular assignment of error will be aborted on appeal.