848 F.2d 193
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
PRODUCTION FINISHING CORPORATION, a Michigan corporation,
Plaintiff-Appellant,
v.
Peter F. SHIELDS, Elmer J. Jaffke, Jr., Thomas Shields and
Investment Company, a Michigan partnership,
Defendants-Appellees.
 Nos. 86-1132, 86-1157 and 86-1237.
 United States Court of Appeals, Sixth Circuit.
 June 2, 1988.
 
 Before NATHANIEL R. JONES and RALPH B. GUY, Circuit Judges and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In this action asserting a violation of the federal securities law and a breach of fiduciary duties, plaintiff-appellant Production Finishing Corporation ("Production") appeals from the judgment entered for the defendants-appellees and from the various post-judgment orders. Upon consideration, we hold that Production's failure to file a timely appeal deprives us of jurisdiction, therefore we dismiss this appeal and affirm the district court's judgment.
 
 I.
 
 2
 Production is a Michigan corporation with its plant located in Wyandotte, Michigan. Its principal business is cleaning and polishing steel for various uses in the automotive industry. Before the controversy which gave rise to this case, Production had one subsidiary: Jaloy Manufacturing Company ("Jaloy"). Located in Warren, Michigan, Jaloy's business was the fabrication of tubing for various automotive uses.
 
 
 3
 In 1981, defendant Peter F. Shield was president of Production and a member of its board; Dean Rhoads was chairman of Production's board and its controlling shareholder; and defendant Elmer Jaffke was Jaloy's general manager. Due to Shields's complaints that Jaloy took up too much managerial time considering its small size and profitability, Production negotiated with several parties in an effort to sell Jaloy. All of these efforts failed.
 
 
 4
 Early in 1981, Jaffke told Shields that he might be interested in purchasing Jaloy. Several months later, in June 1981, Shields told Rhoads of Jaffke's interest. Shields also told Rhoads that Jaffke could only offer Production $250,000 for the company. Acting on Shields's recommendation, Production agreed to sell Jaloy for that amount; provided the payment was in cash. The offer was extended in a June 16, 1981 letter. Even at this late date, however, Shields did not inform Rhoads that he planned to leave Production and start his own business in Flat Rock, Michigan.
 
 
 5
 Despite the attractive price, Jaffke was only able to raise $175,000, so Jaffke approached Shields and asked him if he knew anyone from whom Jaffke could borrow the remaining $75,000. Although Production alleges that Shields encouraged the National Bank of Wyandotte-Taylor to assist Jaffke in financing the purchase, it was Peter Shields, through the Shields Investment Company, who lent Jaffke the necessary funds. With the financing in place, the closing for the transfer of the Jaloy stock was scheduled for July 31, 1981. Neither the letter setting this date nor anything said at the actual closing disclosed the fact that Shields and Jaffke were working together to gain control of Jaloy.
 
 
 6
 On August 10, 1981, Shields and Jaffke executed the documents which formalized their covert agreement. Pursuant to it, Shields owned 60% of Jaloy's stock even though they were held under Jaffke's name. In order to gain possession of the stock, however, Shields had only to demand it.
 
 
 7
 After the deal with Jaffke was consummated, Shields told Rhoads of his decision to resign from Production. He also wrote to the other member of the Board and informed him of his resignation. Some time after this, Production learned that Shields was intimately involved in planning and assisting in Jaffke's acquisition of Jaloy. In the ensuing lawsuit, Production attempted to recover damages on theories of securities fraud (Count I); violation of section 1962(b) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count II); breach of fiduciary duties (Count III); common law fraud (Count IV); and conspiracy to defraud (Count V). Peter F. Shields was named as a defendant in all five counts. The other defendants were Elmer L. Jaffke, Jr., Thomas Shields and the Shields Investment Company. Jaffke settled prior to the commencement of the trial and Thomas Shields and the Shields Investment Company were named as defendants only under Count V.
 
 
 8
 The case was tried before a jury, with Judge George LaPlata from the Eastern District of Michigan presiding. The trial was conducted from September 20, 1985, through October 4, 1985. On October 1, 1985, directed verdicts on Counts II and V were granted. As a result of the directed verdict on Count V, Thomas Shields and Shields Investment Company were dismissed from the lawsuit. Thus, Peter Shields is the only defendant involved in this appeal.
 
 
 9
 Since the key issue in this case is closely linked to what happended procedurally, the following is an exhaustive chronology of this case's procedural history.
 
 
 10
 On October 4, 1985, the jury rendered a general verdict in favor of Production in the principal amount of $492,000. Due to a calculation error by the jury, however, Judge La Plata, on his own motion, reduced the amount of the verdict to $240,000. On December 12, 1985, after the parties submitted separate proposed forms of judgment, Judge La Plata entered judgment for Production in the sum of $353,482.82, a sum which included accrued interest and costs.
 
 
 11
 The December 12, 1985 judgment, however, did not expressly refer to the earlier October 1, 1985 grant of Shields's oral Motion for Directed Verdict with respect to Count II of Production's Complaint (the claim based on an alleged violation of RICO, 18 U.S.C. Sec. 1962(b). Thirty (30) days after the entry of the December 12, 1985 judgment, neither party had filed notice of appeal or a post-trial motion. So, on January 16, 1986, five (5) days after the appeal period had expired, Shields's counsel contacted Production's counsel to arrange for payment of the judgment. Counsel agreed that the value of the judgment was $356,073.70 as of January 15, 1986, with interest accruing at $76.22 per day.
 
 
 12
 However, due to reasons that are disputed, when Shields's counsel tendered a cashier's check in the amount of $356,149.92 to satisfy the judgment, Production's counsel refused to accept the check. The next day, (thirty-six (36) days after entry of judgment), Production filed a Motion for Entry of Final Order on Directed Verdict Rulings, thereby seeking the entry of another judgment to reference the earlier grant of Shields's directed verdict motion on Count II. In its motion, Production claimed that the time to appeal the directed verdict ruling on the RICO count had not yet begun to run since that ruling was not expressly referred to in the December judgment.
 
 
 13
 In response to Production's Motion, Shields asserted that: (a) regardless of how it was denominated, the motion was functionally a motion under Fed.R.Civ.P. 59(e) to alter or amend a judgment; (b) the lower court was without jurisdiction to entertain the motion since it had not been filed within ten (10) days after entry of the judgment; and (c) Production's substantive argument was without merit since interlocutory rulings are merged into the judgment and all interlocutory rulings are subject to review on appeal after the entry of judgment terminating the action.
 
 
 14
 On January 30, 1986, forty-nine (49) days after entry of judgment and twelve (12) days after it filed its Motion for Entry of Order on Directed Verdict Rulings, Production filed its first Notice of Appeal along with a Motion to Extend the Time for Filing its Notice of Appeal. Production did not claim that excusable neglect caused the late filing of its appeal. Rather, it argued that good cause existed for the granting of an extension since it was "unable" to appeal from the lower court's directed verdict ruling on Count II until that ruling was expressly memorialized in the judgment.
 
 
 15
 In response to the January 30, 1986 motion, Shields asserted that: (a) Production's failure to allege that its late filing of its Notice of Appeal was the result of "excusable neglect" precluded the grant of the requested extension to file its appeal; (b) Production failed to demonstrate "good cause"; and (c) Production's substantive argument was incorrect as a matter of law since all interlocutory rulings (including the grant of a directed verdict) are appealable upon entry of a judgment even though they are not expressly referred to in the judgment. In an order dated February 3, 1986, the lower court amended its December 12, 1985 judgment so as to include a provision regarding the directed verdict ruling. The court, however, expressly declared that the directed verdict ruling would relate back to the December 12, 1985 judgment for the purposes of appeal.
 
 
 16
 On February 10, 1986, sixty (60) days after the entry of the December 12, 1985 judgment, Production filed a First Amended Notice of Appeal which sought to appeal the directed verdict ruling on the RICO count and the lower court's February 3, 1986 Order referred to above. On February 13, 1986, the lower court entered its Order Denying Plaintiff's Motion for an Extension of Time to File a Notice of Appeal. On February 18, 1986, Shields filed with this court his Motion to Dismiss Appeal on the ground that the appellate court was without jurisdiction because neither of Production's notices of appeal were filed within thirty (30) days from the date of the judgment and because the trial court had denied Production's Motion for Extension of Time to File its Notice of Appeal.
 
 
 17
 On May 5, 1986, the lower court, in response to Shields's Motion for Entry of Satisfaction of Judgment, entered an order which required Shields to tender payment of the judgment, along with accrued interest. In that order, the district court ruled that in the event that Production should again reject Shield's attempt to pay the judgment, Shields should then tender the funds to the Clerk of the Court and the court would enter a Satisfaction of Judgment.
 
 
 18
 On May 7, 1986, Shields caused to be tendered to counsel for Production a check in the amount of $364,457.90. The check was endorsed and cashed by Production on May 9, 1986 and a Satisfaction of Judgment was entered on May 22, 1986. On July 28, 1986, a panel of this court entered an order referring Production's Motion to Dismiss Appeal to the panel hearing oral argument in these appeals.
 
 II.
 
 19
 The dispositive issue on appeal is whether this court has jurisdiction since neither Production's notice of appeal, nor its first or second amended notices of appeal were filed with 30 days from December 12, 1985. For the following reasons, we hold that we are without jurisdiction and hereby dismiss this appeal and affirm the district court's judgment.
 
 
 20
 Our standard of review is expressed in both case law and the Federal Rules of Appellate Procedure. Fed.R.App.P. 4(a)(1) provides:
 
 
 21
 In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from....
 
 
 22
 Case law provides that a timely notice of appeal is jurisdictional, Broder v. Director, Ill. Dep't of Corrections, 434 U.S. 257 (1978). Therefore, unless an appeal is timely, filed the reviewing court lacks jurisdiction to hear it. Berman v. United States, 378 U.S. 530 (1964). The question of jurisdiction is a question of law over which our review is plenary.
 
 III.
 
 23
 In essence, Production argues that because the December 12, 1985 order was silent regarding Count II, the time for filing its notice of appeal should be calculated from February 3, 1986, the date Count II's written order was entered. Production bases this contention on the separate document rule of Fed.R.Civ.P. 58 which provides that:
 
 
 24
 Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered....
 
 
 25
 Pursuant to the separate document rule, Production contends that not until February 3, 1986, did it have something from which it could appeal.
 
 
 26
 Upon review of the district court's judgment, however, we agree with Judge LaPlata that the record reveals no basis upon which Production can justifiably be excused from not filing its appeal within thirty (30) days of the district court's December 12, 1985 order. The record establishes that the parties intended that the December 12, 1985 order be final. It further establishes the unlikelihood that either side believed that the judgment was not final when it was entered. Thus, we reject Production's argument that the district court abused its discretion by not changing the filing deadline. We find Production's failure to make a timely appeal inexcusable, and since a timely notice of appeal is necessary for us to have jurisdiction, Broder, supra, we hereby dismiss this appeal and AFFIRM the district court's judgment. Because of our decision to dismiss, we do not address Production's RICO claim.